Amy R. Holmes, Appellant, *v.* John Hancock Mutual Life Insurance Company et al., Respondents.

Argued March 3, 1942; decided April 23, 1942.

*Clarence G. Pickard* for appellant. The proceeds of the policies purchased with premiums in excess of $500 a year are subject to application to plaintiff's judgment against the decedent. (*Addiss* v. *Selig,* 264 N. Y. 274; *Bank of Minden* v. *Clement,* 256 U. S. 126; *Van Ness* v. *Ransom,* 215 N. Y. 557; *Matter of Curtis,* 188 App. Div. 470; 228 N. Y. 534; *Barber* v. *Barber,* 62 U. S. 582; *Durland* v. *Syracuse Trust Co.,* 230 App. Div. 786; *Goldfish* v. *Goldfish,* 193 App. Div. 686.) The plaintiff is entitled to recover the amount of insurance paid by premiums to the extent of $101.45. (*Klee* v. *Hess,* 188 App. Div. 322; *Manufacturers Trust Co.* v. *Equitable Life Assur. Society,* 244 App. Div. 357.) The decision of the Appellate Division that the $2,500 policy should not be considered in computing the premium is erroneous. (*U. S. Mortgage & Trust Co.* v. *Ruggles,* 258 N. Y. 32; *Chatham Phenix Nat. Bank* v. *Crosney,* 251 N. Y. 189.) The plaintiff is entitled to recover the entire proceeds of the $2,500 policy. (*Stronge* v. *Knights of Pythias,* 189 N. Y. 346; *Trevor* v. *Wood,* 36 N. Y. 307; *Locomotive Eng. Mut. L. & A. Ins. Co.* v. *Locke,* 251 App. Div. 146; 277 N. Y. 584.) The attempted change of beneficiary created a trust void under section 11 of the Personal Property Law (Cons. Laws, ch. 41) and is, therefore, inoperative and a nullity. (*Johnson* v. *New York Life Ins. Co.,* 75 Fed. Rep. [2d] 425; *Bishop* v. *Bishop,* 257 N. Y. 40; *Leach* v. *Godwin,* 198 N. Y. 35; *Matter of Grace,* 232 App. Div. 76; 261 N. Y. 502; *Matter of Hitchcock,* 222 N. Y. 57; *Equitable Life Assur. Society* v. *Clements,* 140 U. S. 226; *Quast* v. *Fidelity Mutual Life Ins. Co.,* 226 N. Y. 270.) The plaintiff is entitled to recover the dividends which had been allowed to accumulate with the company. (*Manufacturers Trust Co.* v. *Equitable Life Assur. Soc.,* 244 App. Div. 357; *Phœnix Mutual Life Ins. Co.* v. *Felig,* 254 App. Div. 364; *242 West 38th Street Corp.* v. *Meyrowitz,* 248 App. Div. 708.)

*Joseph H. Morey* and *Walter L. Miller* for respondents. The Appellate Division properly held that the basis for determining the excess over the $500 annual premiums paid was the net premiums, that is, the gross premiums less the dividends payable in each year. (*Klee* v. *Hess,* 188 App. Div. 322; *Manufacturers Trust Co.* v. *Equitable Life Assur. Soc.,* 244 App. Div. 357.) The Appellate Division properly held that plaintiff has no claim upon any

of the three policies under section 52 of the Domestic Relations Law (Cons. Laws, ch. 14) because the average net premiums paid annually on all three policies was less than $500. (*Metropolitan Nat. Bank* v. *Sirret*, 97 N. Y. 320; *Juker* v. *Commonwealth*, 20 Penn. St. 495.) The Appellate Division also properly held that plaintiff had no claim upon the first policy and, therefore, none upon any of the three policies. (*Addis* v. *Selig*, 264 N. Y. 274; *Kittel* v. *Domeyer*, 175 N. Y. 205.) There is involved no unlawful suspension of the power of alienation and no trust. (*Matter of Scott*, 249 App. Div. 542; 274 N. Y. 538; *Latterman* v. *Guardian Life Ins. Co.*, 280 N. Y. 102; *Crossman Co.* v. *Rauch*, 263 N. Y. 264; *Springfield Safe Dep. & Trust Co.* v. *Ireland*, 268 Mass. 62; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485.) The trial court and the Appellate Division properly held that the accumulated dividends upon the death of the insured became payable with the face of the policies, and that plaintiff had no claim thereon independent of section 52 of the Domestic Relations Law. (*New York Plumbers Specialties Co.* v. *Stein*, 140 Misc. Rep. 161; *Phœnix Mut. Life Ins. Co.* v. *Felig*, 254 App. Div. 364; *Manufacturers Tr. Co.* v. *Equitable Life Assur. Soc.*, 244 App. Div. 357; *242 West 38th St. Corp.* v. *Meyrowitz*, 162 Misc. Rep. 488; 248 App. Div. 708; *Matter of Messinger*, 29 Fed. Rep. [2d] 158; *Cohen* v. *Samuels*, 245 U. S. 50.)

LEHMAN, Ch. J. In 1923 the plaintiff was granted a decree of divorce in the Supreme Court of the State from her husband, Henry S. Holmes. In accordance with a separation agreement previously made by them, the decree of divorce provided that Henry S. Holmes should pay to the plaintiff alimony at the rate of $150 per month. Henry S. Holmes died in 1939. He had married the defendant Marie F. Holmes after the divorce. She survived him. She is named as the life beneficiary under three policies issued by The John Hancock Mutual Life Insurance Company, insuring the life of Henry S. Holmes. These policies were issued prior to March, 1927. At the time of his death Henry S. Holmes was in default in payment of alimony due to the plaintiff. As creditor of the deceased the plaintiff seeks in this action to obtain payment of the unpaid alimony out of the proceeds of the insurance policies upon the life of Henry S. Holmes, the debtor.

Each of the policies contained provisions permitting the insured to nominate and change the beneficiary to whom the proceeds of the policies should be paid and also offering to the insured " optional methods of settlement." Before his death the insured nominated his wife, the defendant Marie F. Holmes and his nephews, the defendants William R. Holmes and Morgan Dwight Holmes, as beneficiaries under each of said policies, and directed that the proceeds of the policies be left on deposit with the company, and that the interest be paid quarterly to his wife during her lifetime and after her death to his nephews " until the elder or survivor of said nephews attains the age of thirty-five," and that thereafter the principal be paid to the nephews or to the survivor The plaintiff challenges the validity of these directions on the ground that they constitute an unlawful suspension of the power of alienation.

We may assume that if the proceeds of the policies constituted a trust fund, these directions would be void under the provisions of section 11 of the Personal Property Law (Cons. Laws, ch. 41). The insurance company does not, however, hold the proceeds of the policy as a trust fund. By the terms of the policy it has contracted to pay stipulated amounts, at stipulated times and in stipulated manner. " The obligation of the insurance company constitutes a debt from the company to * * * the beneficiary, under the policy." The stipulated payments " are not income on personal property. They constitute deferred payments which the company agreed to make to the beneficiary * * *." (*Crossman Co.* v. *Rauch*, 263 N. Y. 264, 273.) The provisions of section 11 of the Personal Property Law have no application to such an obligation.

The serious problem presented by this appeal concerns the application of section 52 of the Domestic Relations Law (Cons. Laws, ch. 14), which was impliedly repealed in March, 1927, by the enactment of section 55-a of the Insurance Law (Cons. Laws, ch. 28; L. 1927, ch. 468). (*Chatham Phenix Nat. Bank & Trust Co.* v. *Crosney*, 251 N. Y. 189; *United States Mortgage & Trust Co.* v. *Ruggles*, 258 N. Y. 32.) The repealer may not, however, be given retroactive effect. (*Addiss* v. *Selig*, 264 N. Y. 274.) Section 52 restricts the right of a wife to receive, " as her separate property,

and free from any claim of a creditor or representative of her husband " insurance moneys payable by the terms of a policy upon her husband's life. That portion of such insurance moneys which is purchased by excess of premium above five hundred dollars " actually paid annually out of the husband's property " is by the terms of the statute " primarily liable for the husband's debts." The plaintiff's debt originated before the repealer of the statute and to obtain payment of her debt she may claim any rights provided by the statute.

At the outset we note that the statute restricts only the right of a wife to receive insurance moneys. (*Chatham Phenix Nat. Bank & Trust Co.* v. *Crosney, supra.*) The insurance moneys payable to the wife during her lifetime are primarily liable for the husband's debts in so far as such moneys were purchased by excess of premiums over $500. The moneys payable to the nephews will be received by them free from claims of debtors. It is not possible for this court upon the evidence presented upon the trial to compute what portion, if any, of the moneys payable to the wife were purchased by such excess. We can, upon this appeal, determine only how the computation should be made.

The first policy insuring the decedent's life in the sum of $2,500 is dated 1916. The stated premium in the policy is $75.45. The second policy insuring the decedent's life in the sum of $10,000 is dated December 26, 1923. The stated premium is $258.80. The third policy insuring the decedent's life in the sum of $10,000 is dated June 27, 1925. The stated premium is $267.20. Annual dividends were payable under the terms of each policy and the insured was given the option whether dividend distributions should be " (a) taken in cash, (b) applied in abatement of premium payments, (c) left on deposit with the Company to accumulate with interest at the rate of not less than three and one-half percentum per annum, payable with the policy or withdrawable in cash on demand by the holder." Each policy also provided that in consideration of an increased premium the insured should be entitled to certain disability benefits including the waiver by the company of the payment of " further premiums during the continuance of the disability."

The parties have stipulated the facts. At the time when the marriage between the plaintiff and her husband was dissolved, the first policy of insurance upon the husband's life had been in effect for several years. The insured had designated the plaintiff as the beneficiary, but the right to change the beneficiary was reserved to the insured. In 1925 the insured designated " his former wife, Amy R. Holmes, his wife Marie F. Holmes and his nephews William R. Holmes and Morgan Dwight Holmes to be beneficiaries under said policy * * * still reserving to himself the privilege of other changes either in beneficiary or mode of payment. * * * " Not until 1932 did the insured exercise his reserved power to change his beneficiary. Thus if he had died prior to March, 1927, when section 52 of the Domestic Relations Law was repealed, the plaintiff would have received the proceeds of the policy as beneficiary, and under the statute no creditor of the insured could have made any claim upon the proceeds of the policy. The courts below have held that since the proceeds of the policy were received by the wife under a designation of beneficiary made after section 52 was repealed, no creditor can claim any rights to the insurance money under that section.

We do not agree with that conclusion. The designation by the insured of his wife as beneficiary of the policy was made under a power reserved in the policy itself. While section 52 was in effect the creditors had the right to resort to the proceeds of the policy if the insured by exercise of his reserved power should designate his wife as beneficiary. The Legislature by repealing section 52 did not deprive creditors of the rights assured to them by the repealed statute, even assuming that the Legislature could have done so. (*Addiss* v. *Selig, supra.*) The change of · beneficiary thereafter by exercise of a power previously reserved did not operate to confer upon creditors a right to the proceeds of any policy which they did not possess in 1927. At that time their right was, it is true, still contingent. The change of beneficiary caused the contingency to become a fact. Even without a new exercise by the insured of his reserved power to change the beneficiary, if this plaintiff had died, the wife of the insured would have been entitled to the proceeds of the policy and the creditors of the insured could have made claim to them.

For these reasons we conclude that section 52 of the Domestic Relations Law applies to this policy after 1927 in the same manner as the section applied to this policy before the section was repealed.

Until June, 1925, when the third policy was issued, the premiums on policies of life insurance actually paid annually out of the husband's property did not exceed $500. The statute has no application to insurance moneys payable by the terms of the first two policies in so far as such moneys have been purchased out of premiums paid prior to that date. The insurance moneys payable to the wife upon all three policies are primarily liable for the debts of the insured only in so far as such moneys have been purchased by " excess of premium above five hundred dollars " paid thereafter " annually out of the husband's property." The question remains — how such excess shall be calculated in this case.

The Appellate Division has held that in computing the premium actually paid annually out of the husband's property, the courts must deduct from the amount of the annual premium, as stated in the policy, the amount of the dividends declared in any year. Under the " distribution options " contained in the policies, an insured might, if he chose, require that these dividends be " applied in abatement of premium payments." It is plain that where the insured exercises his option to have the dividends applied in that manner, the amount actually paid out of the property of the insured is only the remainder of the premium as " abated " by the dividends. In our opinion, that is true also where an insured exercises the option that such dividends be " taken in cash." For, the insurance moneys payable under the terms of the policy upon the death of the insured, are purchased only by that part of the premium which is retained by the insurance company " in order to cover the cost of furnishing the insurance." The insured " gets the insurance at actual cost." (*Rhine* v. *New York Life Ins. Co.*, 273 N. Y. 1, 10.) That is not true where the insured exercises the third distribution option, to have the dividend " left on deposit with the company to accumulate with interest at the rate of not less than three percentum per annum, payable with the policy or withdrawable in cash on demand by the holder " and does not thereafter demand such dividends. The dividends are then paid to the beneficiary as part of the insurance moneys payable by the

insurance company under the terms of the policy in consideration of the annual premiums fixed by the policy. The actual purchase price of all the insurance moneys is the premium fixed by the policy and retained by the insurance company.

In February, 1933, the insured became entitled to the disability benefits provided by the policy. From that date, the insurance company, in accordance with the stipulations of the policy, waived actual payment of any further premiums, but credited the insured with dividends as if such premiums had been paid. The waiver of payment of the premiums was purchased by the insured through payment of an additional amount of premium. During the years before the disability arose, that additional amount was exacted by the company as part of the premium in order to cover the cost of providing the insurance if payment of such cost by the insured should thereafter be waived in accordance with the terms of the policy. In effect, the promise to waive further payments of premium after disability was a promise by the company to make such payments in behalf of the insured, and when the company credited the insured with dividends upon such premiums, the parties gave to the policy that practical construction.

The judgment of the Appellate Division and that of the Special Term should be reversed, with costs in all courts to the appellant to abide the event, and the case remitted to the Special Term for a new trial or hearing, in order to compute, in accordance with this opinion, the amount of insurance moneys, if any, which are " primarily liable for the husband's debts."

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment accordingly.