In the Matter of CELIA NIRES, as General Guardian of EUGENE NIRES et al., Infants, Appellant.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES et al., Respondent.

Argued January 6, 1943; decided March 4, 1943.

*Jesse Perlmutter* for appellant.

*Carl F. Hollander* and *Louis W. Dawson* for Mutual Life Insurance Company of New York, respondent.

*Louis P. Galli* and *William J. Moran* for Travelers Insurance Company, respondent.

*James D. Ewing* for Equitable Life Assurance Society of the United States, respondent.

*Perlie P. Fallon* and *Ferdinand H. Pease* for New York Life Insurance Company, respondent.

FINCH, J. May infants obtain an immediate allowance for support and education from interest accrued upon the proceeds of a life insurance policy left on deposit with the insurance company, despite an agreement between insured and insurer that the interest shall be accumulated but not be paid until the infants become twenty-one years of age?

The facts in so far as pertinent to the decision are in brief as follows: Henry Nires at the time of his death carried life insurance policies with five insurance companies in favor of his three minor children. These policies permitted the insured to select one of several optional modes of settlement. The modes of settlement agreed upon between Nires and the companies provide in general, with minor variations not here material, that settlement of the amounts becoming due upon the death of the insured shall be made with the children of the insured

in equal shares, the rights of these beneficiaries against the insurance companies being set forth in so-called certificates of deposit or trust agreements issued by the companies. Two of the insurance companies agreed to pay the proceeds of the policies to themselves or to receive the proceeds " as trustee." This difference, however, is not material in the decision of the question presented, since in both certificate of deposit and trust agreement, it is expressly provided that the amounts of insurance are not to be segregated but may be commingled with the general corporate funds of the companies and the interest determined not by what the principal actually earns but by applying a fixed rate of interest at a minimum rate of three per cent. The beneficiaries have no share in the increase or decrease in value of the assets. Interest is to be accumulated until the infants are twenty-one years of age, when such income is to be paid in one sum and thereafter in periodic payments. Payment of the principal sums is to be made when the beneficiaries become thirty years of age. Such rights, however, are subject to divestment in the event of the death of a beneficiary before reaching the age of thirty, with payments over in such event to the survivors or survivor, and then to the personal representatives of the survivor or of the insured, together with a further contingent interest in unborn children of the beneficiaries, under the trust agreements with the New York Life, if a present infant beneficiary dies after reaching the age of twenty-one. In general, also, there is incorporated as a part of the agreements, in one case even by title, the provisions of section 15 of the Personal Property Law, which provide that the proceeds of these policies, and any and all payments and benefits thereunder, are not assignable, commutable or subject to encumbrance or legal process.

The decedent's widow, as general guardian on behalf of two of the infant beneficiaries, thirteen and sixteen years of age, respectively, has brought this proceeding, alleging that she is without funds to support the two children and that no funds are available besides these accumulations of income held by the life insurance companies under the agreements. She prays for an order authorizing and directing the life insurance companies to pay over to her for the support and education of the two children suitable sums out of the accumu-

lated or current income of the property held by the companies for the benefit of the infants.

At Special Term the application was denied. Upon appeal, the Appellate Division has affirmed unanimously, and the case is here by permission of this court.

It is urged by petitioner that the Supreme Court is given power by the Legislature, under section 17 of the Personal Property Law, to invade and set at naught these agreements made between the insured and the companies. Section 17 is entitled " Anticipation of directed accumulation," and provides in brief that when a minor, for whose benefit an accumulation of the income of personal property has been directed, shall be destitute of other means, the Supreme Court or, if the accumulation shall have been directed by a will, the Surrogate's Court, respectively, may, upon application by the minor, cause a suitable sum to be taken from the moneys accumulated or directed to be accumulated for his support or education and paid over to the infant.

The language of section 17, together with its setting and the nature of the power conferred therein, does not indicate that this section is applicable to a contract between an insured and a life insurance company.

The language of this statute, section 17, by its terms purports to be applicable only where there is a direction for an accumulation of income on a trust of personal property. That the words " * * * a valid accumulation of the income of personal property * * * " refer to a trust of personal property is shown by an examination of section 15 of the same article, as amended in 1911. (L. 1911, ch. 327.) The first sentence of section 15 provides that a beneficiary's interest in " * * * a trust to receive the income of personal property, and to apply it to the use of any person * * * " shall not be transferable. The amendment to section 15 forbids the transfer, if the parties so agree, of " * * * the proceeds of a life insurance policy, becoming a claim by death of the insured," which " are left with the insurance company under a trust or other agreement," thus showing unmistakably the intention of the Legislature to apply the words " income of personal property " solely to a trust of personal property, and sharply to distinguish such a trust from a so-called trust

or other agreement relating to the proceeds of a life insurance policy. In other words, section 17 is dealing with trusts of personal property and directions concerning such property given by deed or will, as contrasted with agreements made between insured and insurer concerning the relationship of debtor and creditor between them, as in the case at bar. Accumulation of income under a certificate of deposit or life insurance trust is not based upon a direction by a grantor or testator, but rather upon an obligation arising from contract between insured and insurer. The insurance company does not hold the proceeds of a life insurance policy as a trust fund (*Holmes* v. *John Hancock Mut. Life Ins. Co.*, 288 N. Y. 106; *Latterman* v. *Guardian Life Ins. Co.*, 280 N. Y. 102); although the term " trust " is employed, no real trust agreement is in fact involved. (*Crossman Co.* v. *Rauch,* 263 N. Y. 264, 273.) But there is a debt owing to beneficiaries payable in stipulated amounts, at stipulated times, and in a stipulated manner. Nor is the interest due to the beneficiaries the increment or incident of a *res* held in trust, but is payable under the agreements at a fixed rate regardless of what the sums represented by the certificates of deposit or so-called trust agreements actually earn. Therefore, in the case at bar, we are dealing with rights under an agreement and not with a direction for accumulations upon a trust of personal property created by deed or will. In consequence section 17 by its language is not applicable to the case at bar.

The setting of section 17 among the provisions of the Personal Property Law confirms and harmonizes with the literal wording of the statute. Section 17 is a part of the same statutory structure wherein appear immediately preceding, sections 15 and 16 of the same article, namely, article 2 of the Personal Property Law which is entitled, " Future Estates; Charitable Uses; Accumulation of Income; Trust Estates." This shows, as clearly as titles can, that the Legislature is dealing in this article in general with trusts of personal property where accumulations of income have been directed by deed or will, except where specific provision is made concerning other than such trusts, for instance, in the amendment made in 1911 to section 15, which specifically deals with agreements made between insured and insurer. Moreover, the care-

fully worked out distinction in this section 15 between the provisions governing trusts of personal property and the so-called "life insurance trusts" leads to the conclusion that if the Legislature had intended to bring life insurance agreements within the scope of section 17, it would have expressly so provided instead of dealing only with trusts of personal property under directions in a deed or will.

Furthermore, the amendment added to section 15 in 1911 provides that when the proceeds of a life insurance policy are left on deposit with an insurance company, "the benefits accruing thereunder after the death of the insured shall not be transferable, nor subject to commutation or incumbrance, nor to legal process * * * if the parties to the trust or other agreement so agree." In other words, we have in the case at bar not only an agreement between the insured and the insurer, but we have also a statute which is made a part of these very agreements expressly prohibiting the invasion of these funds by legal process where the parties have so agreed, as they have in the case at bar.

Finally, the nature of the power given to the Supreme Court under section 17 is readily understandable when that section is viewed as dealing only with directions for accumulations of income under trusts of personal property. The extent of the jurisdiction of the courts of equity over trusts of personal property is well established. On the other hand the jurisdiction of courts to apply the powers conferred by section 17 to a relationship arising out of an agreement made between insured and insurer is not only not an exercise of the normal equity powers over trusts of personal property, but, as already noted, is expressly forbidden by the provisions of section 15.

Other states likewise have held to the view that the general power of an equity court to regulate trusts of personal property and to apply the income thereof contrary to a direction for accumulation does not justify the invasion of an agreement whereby income is to be accumulated in an insurance relationship. (*Pierowich* v. *Metropolitan Life Ins. Co.*, 282 Mich. 118 and case cited therein.) In harmony with this construction it may be noted that, while in section 16 of the same article accumulations of income of personal property are prohibited, except for infants, an amendment to that section permits

accumulations of the income arising out of moneys held pursuant to an insurance relationship, namely certain accumulations of the income of these moneys to be applied to the payment of premiums of insurance. (L. 1927, ch. 681.)

The unfortunate condition existing as to these minor children does not arise from the contract and is not controlling so as to justify its invasion. The intention of the insured is to be gathered solely from the agreements as made and which, while he had power to change them during his life, were left in force at the time of his death. Insurance has developed to large proportions and property rights of insured and beneficiaries have been created upon the faith of the protection accorded by the courts to insurance agreements and upon the enactment of that policy in statutory form in section 15. Nothing in section 17 or related sections furnishes any authority to the courts to invade and render nugatory these agreements.

Since neither the language nor the setting of section 17 nor the nature of the power conferred therein indicates that the section deals with anything other than directions applicable to trusts of personal property, it becomes unnecessary to pass on the question whether an invasion of contractural rights between insured and insurer may be sustained as constitutional if in fact it had been authorized by the Legislature.

The order appealed from should be affirmed, without costs.

LEHMAN, Ch. J. (dissenting). Each of the defendant insurance companies holds the proceeds of a policy issued by it insuring the life of Henry Nires. In each policy the insured named his three infant children as beneficiaries and each insurance company agreed in substance that at the death of the insured it would hold the proceeds " on deposit " crediting the fund with interest at a rate stipulated in the policy; that when each beneficiary reached the age of twenty-one years the company would pay to him or her the accumulated interest on the share of the proceeds apportioned to such infant; that thereafter, the company would pay the stipulated interest to such beneficiaries till he or she reached the age of thirty and that then it would pay the share held " on deposit * * * together with any interest accrued thereon " to the beneficiary " in a single sum." There are variations in the

language in which the obligation of the respective insurance companies is formulated. As Judge FINCH in his opinion points out, in two of the policies the insurance company in terms agrees to hold the proceeds as " trustees " but in substance the obligation of each insurance company is the same. The company owes to the beneficiary a contractual obligation to make the stipulated payment. " Although the word trust is used, the agreement is not in fact a trust agreement." (*Crossman Co.* v. *Rauch,* 263 N. Y. 264, 273.)

Two of the beneficiaries named in the policies are infants residing with their mother, the petitioner-appellant. These infants received nothing under the will of their father, the insured. They are, it appears, entirely destitute and their mother with whom they reside is also without money or property which she can use for their support. She has applied to the Supreme Court for an order directing the insurance companies to pay to her as guardian of the two infant children the accumulated interest and any interest that may hereafter accrue to them from time to time on the proceeds of the life insurance policies held by the insurance companies or such sum as to the court may seem sufficient for their support and education. The petition has been denied on the ground that the Supreme Court has no power to direct such payment.

Section 17 of the Personal Property Law provides that " when a minor, for whose benefit a valid accumulation of the income of personal property has been directed, shall be destitute of other sufficient means of support or education, the supreme court  *  *  *  may  *  *  *  cause a suitable sum to be taken from the moneys accumulated or directed to be accumulated, to be applied for the support or education of such minor." The sole question presented upon this appeal is whether the accumulation of interest on the proceeds of the policies which the insurance companies have agreed to pay to the infants as each reaches the age of twenty-one is a " valid accumulation of the income of personal property " within the meaning of the statutory provision.

It must be conceded at the outset that the insurance company is under no obligation to hold the proceeds of the insurance policy as a separate fund, and as Judge FINCH points

out, the accumulated interest which the company has agreed to pay is fixed by agreement and is not in technical sense " income from personal property." The insurance company is not a trustee since it holds no specific fund and for the same reason the statute against restraints on alienation and on accumulations of income do not apply to the contractual obligation of the company. (*Holmes* v. *John Hancock Mut. Life Ins. Co.*, 288 ° N. Y. 106.) Though the insurance company is not technically a trustee and holds no specific fund for the benefit of the petitioner's infant children, yet its position is so closely analogous to that of a trustee and its obligation to pay interest on the proceeds of the policy is so closely analogous to an obligation to pay the " income " of a fund of the same amount as those proceeds, that the difference is commonly ignored in thought and speech. So we speak of a depositor's money in a bank and the income of such money though technically the bank holds no money for the depositor and merely owes him a debt. We have in the language of the contracts between the insurance companies and the insured which fixed the contractual obligation of the companies convincing evidence that the parties to the contracts regarded the relationship between the company, promising to make deferred payments of the principal of the proceeds with interest thereon, and the beneficiary entitled to such deferred payment, as that of a trustee holding a specific fund and *cestui* entitled to the income of the fund. That is clearly expressed in two policies and it is instinct in the language of the other policies. The ultimate question which we must decide is whether the Legislature in section 17 of the Personal Property Law intended that the words "accumulation of the income of personal property" should be confined to the income of personal property held in the form of a technical trust or intended to include the accumulation of interest upon the proceeds of an insurance policy when payment is deferred under such a contract with the insurance company made for the benefit of an infant.

The statute was enacted before the contracts with the insurance companies were made. If the language of the statute is given broad construction it includes the accumulation of interest directed by the contracts. Then the provision of the statute that the court may order payment of such accumulation for

the support of the infant beneficiaries is as much a part of each contract as if it had been integrated in terms in the contract. We may not lightly assume that a father who takes out a policy of life insurance for his children would provide that the income of the proceeds of the policy should be accumulated during the infancy of his children unless . he believed that if the children should be destitute the income could be applied for their benefit. To the ordinary layman the statute offered such assurance. The petitioner does not, I think, urge that the Supreme Court is given power by the Legislature under section 17 of the Personal Property Law " to invade and set at naught these agreements made between the insured and the companies." Obviously any statute which attempted to given power to the courts to " set at naught " any contract would be unconstitutional. What the petitioner here urges is that the courts should enforce these contracts made by a father to provide for his children, including in the contracts the statutory provision that during the infancy of the children the court may direct that income which would otherwise be accumulated should be applied for the support and education of his children, if they would otherwise be destitute.

Labored analysis of the language of the title and of other sections of the same article of the Personal Property Law furnishes no plain guide to the intention of the Legislature in enacting section 17, and conflicting inferences might be drawn from different parts of the statute. We do know that the relationship created by the contracts is so nearly analogous to that of trustee and *cestui* that the insurance companies and their attorneys in drafting the terms of the contract ignored the distinction. We do know that in common parlance men are prone to ignore the distinction between " accumulated income of personal property " and accumulated interest on moneys held on " deposit " under a contract for deferred payment. We find no sound reason why the Legislature should have intended a distinction which men not versed in the technicalities of the law might not discern. Upon the argument of the appeal the attorneys for the insurance companies frankly said that they could see no reason why the Legislature should draw such a distinction. The statute is in my opinion misread and the purpose of an insured in taking out the insurance policies for

the protection of his children would be thwarted if the language of the statute is confined to its technical meaning.

The order of the Appellate Division should be reversed.

RIPPEY, LEWIS and DESMOND, JJ., concur with FINCH, J.; LEHMAN, Ch. J., dissents in opinion in which LOUGHRAN and CONWAY, JJ., concur.

Order affirmed. (See 290 N. Y. 745.)