## NEW YORK LIFE INS. CO. v. BEEBE et al.
### Civil Action No. 1969.

District Court, D. Maryland.

Oct. 17, 1944.

Carman, Anderson & Barnes (by Wilson K. Barnes), of Baltimore, Md., for plaintiff.

Mullikin, Stockbridge & Waters (by Enos S. Stockbridge), of Baltimore, Md., for Roswell C. Mower, Dorothy M. Bergland, and Edward B. Mower, Jr.

Tydings, Sauerwein, Levy & Archer (by Herbert F. Levy), of Baltimore, Md., for Dorothy Beebe.

COLEMAN, District Judge.

This is an interpleader proceeding instituted under the provisions of the Federal Interpleader Act, 28 U.S.C.A. Sec. 41, Subd. 26. The jurisdictional and venue requirements of the statute are satisfied. The precise question now before the Court arises on a petition of three of the defendants, Roswell C. Mower, Dorothy M. Bergland, and Edward B. Mower, Jr., and answer of the plaintiff thereto, and involves the interpretation of an insurance policy issued by the plaintiff in the amount of $100,000 upon the life of one Arthur C. Mower, a resident of California, payable in accordance with a special settlement agreement attached to and made a part of that policy.

Summarized, the provisions of this special settlement agreement, in so far as they are material to the issues now before the Court, are as follows: Upon the death of the insured, 15/16ths of the principal amount of the policy was to be retained by the insurance company, the present plaintiff, and the interest accruing thereon was to be

paid by it to the insured's widow during her lifetime, and upon her death, the principal was to be paid in a single sum "to my children or child, if any, share and share alike," and the children of any deceased child; if no child or grandchild of the insured was then living, one-half of the principal of the fund was to be retained by the insurance company and the income thereon paid to Roswell C. Mower, a brother of the insured, during his lifetime, and upon his death, such one-half of the principal was to be paid in a single sum to "the children or child, if any, of said Roswell C. Mower, share and share alike," and the children of any deceased child of said Roswell C. Mower; and if at his death Roswell C. Mower left no child or grandchild, then such one-half of the principal should be paid in a single sum to the then living children or child of a deceased child of another brother of the insured, Edward B. Mower. By similar provisions, the remaining one-half of the principal was to be held by the insurance company for the benefit, first, of the brother Edward B. Mower, during his lifetime and thereafter for the benefit of his children or grandchildren or if none, for Roswell C. Mower, the other brother, or if he were not living, then for the benefit of his children or grandchildren. In the event that the one-half of the principal held primarily for the benefit of Roswell C. Mower should fail to vest in accordance with the aforegoing provisions, then such part of the principal should be payable to the executors or administrators of the last survivor of the insured, Dorothy Mower, his wife, and Roswell C. Mower, his brother; and in the event that the one-half of the principal held primarily for the benefit of Edward B. Mower should fail to vest in accordance with the aforegoing provisions, then such part of the principal should be payable to the executors or administrators of the last survivor of the insured, Dorothy Mower, his wife, and Edward B. Mower, his brother.

Among the provisions in the special settlement agreement is the following: "I further direct that this Agreement shall be subject to and governed by the Laws of the State of California and especially by Section 2768 of the Civil Code of the State of California and that payments hereunder shall not be subject to transfer, anticipation or commutation or encumbrance by any beneficiary, and shall not be subject to the claims of the creditors of any beneficiary or to any legal process against any beneficiary."

The insured died on January 13, 1935, without ever having had any children. His wife, Dorothy Mower, survived him. She had a daughter, Dorothy, one of the present defendants, by a previous marriage, who has herself been twice married, first to one Beebe, and later to one Lawrence, to whom she is still married. The insured's wife died January 27, 1943. At the time of her death, a brother of the insured, Roswell C. Mower, was and he is still living; he is married but has never had any children. Another brother, Edward B. Mower, died on September 13, 1936, that is, after the insured's death, but prior to the death of the wife of the insured, leaving two children who are still living, one of them Dorothy M. Bergland, and the other Edward B. Mower, Jr., both parties to this proceeding.

As a result of the aforegoing circumstances, the stepdaughter of the insured, Dorothy Beebe Lawrence, has asserted that the intention of the insured, her stepfather, as evidenced by the language employed in the Special settlement agreement, was to include her within the phrases "any child or grandchild of mine," and "my children or child," and that accordingly, she is entitled to be so treated, the effect of such interpretation being to cut off the interest of the brothers of the insured, Roswell C. Mower, Edward B. Mower, and their children. On his part, the brother, Roswell C. Mower, has asserted that by the terms of the special settlement agreement, the insured intended to make provision after the death of his wife, first, for children of his own blood only, and failing such children, then for his two brothers', excluding his stepdaughter; and that the insurance company should be guided accordingly in the payment of principal and income. Dorothy M. Bergland and Edward B. Mower, Jr., the two children of Edward B. Mower, other brother of the insured, and the remaining defendants in the present proceeding, on their part have made the same claim as has Roswell C. Mower with respect to the interpretation to be given to the special settlement agreement.

In view of the aforegoing, the insurance company filed two interpleader proceedings in this Court, and pursuant to its bill of complaint in one of these—the present proceeding (No. 1969)—it has filed with this Court its duly approved bond for the sum of $47,418.06, representing 15/32nds of the

proceeds of the policy, principal and interest, as to which, pursuant to the special settlement agreement, Roswell C. Mower, is named a life beneficiary, and which is covered by a special settlement certificate which the company issued pursuant thereto. The company asks, in view of the conflicting claims of the various parties, as above set forth, that this Court determine which of them are legally entitled to receive this money, and that without such determination, it cannot pay it over to any of them without subjecting itself to a possible double payment, if it should finally appear that it has wrongfully determined in favor of any of these claimants at the expense of any of the others.

In the other (No. 1968) interpleader proceeding, the insurance company has deposited an identical amount, representing another 15/32nds of the proceeds of the policy, principal and interest, as to which, pursuant to the special settlement agreement, Edward B. Mower is named a life beneficiary, and which is covered by another special settlement certificate issued for that amount; and the company has, likewise, asked for a determination of the rights of the respective claimants as to this sum.

Following the institution of these interpleader proceedings by the insurance company, and the filing by the various defendants of their answers, setting forth their respective contentions, as above, the defendants agreed among themselves upon a basis of settlement of their conflicting claims in order to avoid the expense and uncertainties of litigation. This proposed settlement contemplates that the sum of $10,000 shall be paid to Dorothy Beebe Lawrence, one-half out of the funds for which a bond has been deposited by the insurance company in this Court in the present case, No. 1969; and the other half to be paid to her by Dorothy M. Bergland and Edward B. Mower, Jr., out of the funds involved in the companion interpleader proceeding, No. 1968. It is a further provision of this proposed settlement that the costs of both of the interpleader proceedings shall be borne by the defendants therein, other than Dorothy Beebe Lawrence.

The insurance company refused to make any contribution to this proposed settlement out of the funds in its hands, alleging that it has no power or authority so to do. Thereupon, the various claimants filed their petition in this proceeding, No. 1969, praying that a decree be entered approving the proposed settlement as above set forth, and directing the insurance company to make payment in accordance therewith. The matter is now before the Court on this petition, and the insurance company's answer in which it alleges that it cannot take part in the proposed settlement because it cannot lawfully permit any portion of the fund required to be held by it for the lifetime of Roswell C. Mower, and the interest thereon paid to him (unless required by Court decree to pay the fund, instead, to Dorothy Beebe Lawrence), to be anticipated or transferred during his lifetime, as the defendants seeks to do by their proposed settlement agreement.

The insurance company further alleges that the interests of the defendants, Dorothy M. Bergland and Edward B. Mower, Jr., are contingent and not vested interests as petitioners contend, so that their consent to the proposed settlement agreement would not protect it from possible additional liability to unborn heirs or other possible claimants to the fund in question, should this Court authorize the contribution of $5,000, as contemplated, to the proposed settlement.

There are only two basic questions presented for our decision: First, is the step-daughter of the insured, Dorothy Beebe Lawrence, to be treated as "a child of mine" as those words are used in the special settlement agreement? Second, is there any principle of law, statutory or otherwise, applicable to the special settlement agreement which will permit a diversion, as is contemplated by the petitioners' proposed settlement of their conflicting claims, of any of the funds covered by the special settlement agreement from the specific alternative purposes set forth in that agreement, namely, distribution, upon the death of the wife of the insured, either to his own child or grandchildren, or in default of same, to his brother Roswell for life and then with specified remainders over?

There is no ambiguity about the terms of the special settlement agreement. They are that upon the death of the insured's wife, the fund is to go either to "any child or grandchild of mine * * * then living," or the fund is to be held by the insurance company and the interest paid to the brother of the insured, Roswell C. Mower, for life, and upon his death, to his children or grandchildren then living and if none such, then to the children or grandchildren of his brother Edward B. Mower then

living, and if none, to the executors or administrators of the last survivor of his wife, his brother Roswell and himself.

■■ Taking up the first question, it is entirely clear that it would do direct violence to the words of the special settlement agreement, to attempt to place upon them a construction that would embrace a stepchild. As we have seen, it is provided in the agreement that its provisions shall be governed by the laws of California. We have been referred to no authority of that State, statutory or otherwise, nor of any other State, to the effect that where one, in a document of this kind, speaks of "any child of *mine*" (italics inserted), he is to be understood as speaking of any one other than a child of his own blood. The word "child" has both a legal meaning and an age-old lay meaning, and therefore, in some instances the meaning in which it is used may depend upon the context. Thus, although this word may import minority, infancy, or the early years of life, there are uses of the term where age has nothing to do with the meaning involved. However, in its primary and commonly understood meaning, "child" or "children" refers to parentage. Depending on the circumstances of its use, and where it is apparent that it was intended to give the term a more extended significance or where statutes have altered the common law, the term may be, and often has been enlarged so as to include, for example, an illegitimate child, an adopted child or a stepchild. See . In re Moore's Estate, 7 Cal.App.2d 722, 47 P.2d 533, 48 P.2d 28; In re Vizelich's Estate, 129 Cal.App. 347, 18 P.2d 773; Wolf v. Gall, 32 Cal.App. 286, 163 P. 346, 350; see also Community Baking Co. v. Reissig, 164 Md. 17, 164 A. 176. However, in the absence of special circumstances or considerations, since in its ordinary, popular and legal sense, the term embraces only the first generation of offspring, it is the general rule that it will be construed not to include any other persons.

The fact that the stepfather may have supported or lived with his stepchild, or may have spoken of or addressed his stepchild, as is asserted was done in the present case, in endearing terms, as though in a parental status, is clearly not sufficient ground for altering this general, firmly established rule.

Therefore, the usual construction must be followed in the present case, with the result that the petitioner, Dorothy Beebe Lawrence, must be excluded as a beneficiary under the special settlement agreement.

■ Turning, then, to the second basic question presented for determination, it is equally clear that the general scheme of distribution shows a primary concern for the insured's wife, then for his children or grandchildren if any, and then for his brothers. Any offspring of the latter are only secondarily considered; and it seems clear from all of the language employed in the special settlement agreement that the intention of the insured was that survival was a condition precedent to the vesting of any rights in these unknown, secondary beneficiaries. Witness the fact that the limitation is always to children "then living," and also, it is specifically stated that children of deceased children shall receive the share to which their parents "would have been entitled if he or she had survived." But apart from the clarity of the language employed, we are not permitted to speculate as to the intention of the insured because of the fact that he specifically directed in the special settlement agreement that it "shall be subject to and governed by the Laws of the State of California, and especially by Section 2768 of the Civil Code of the State of California, and that the payments hereunder shall not be subject to transfer, anticipation or commutation or encumbrance by any beneficiary, and shall not be subject to the claims of the creditors of any beneficiary or any legal process against any beneficiary."

We are thus required to determine initially, just what Section 2768 provides. It reads as follows: "Any life policy may provide that the proceeds thereof or payments thereunder shall not be subject to transfer, anticipation or commutation or encumbrance by any beneficiary, and shall not be subject to the claims of creditors of any beneficiary or any legal process against any beneficiary." Sec. 10171, Insurance Code of California, St.1935, p. 639; Codes of California 1937, Deering, Vol. 1, page 207.

It is too clear for argument that for this Court to authorize, in order to effect the proposed settlement between the various claimants, the payment of $5,000, or any sum, to a stepchild of the insured out of the funds which are the subject of this and the companion interpleader proceeding, would be a diversion, impliedly if not expressly, forbidden by the language of the statute just quoted which the insurance

company and the insured expressly made a part of their contract. "Transfer, anticipation or commutation or encumbrance by any beneficiary," being specifically prohibited, a fortiori, the transfer or diversion of any of the funds to some one who is not even a beneficiary, is clearly forbidden, unless the courts of California have placed upon these words in the statute a liberality of interpretation not disclosed by reading them, or unless there is support for so doing in some other statute of the State akin, for example, to statutes, such as some States have enacted, permitting invasion of trusts of personal property for current necessities of certain types of beneficiaries.

We find nothing in any of the California decisions which places upon these words a meaning other than that which ordinary, reasonable construction gives to them. Nor have we been referred to any liberalizing California statute. In the case of In re Nires, 290 N.Y. 78, 48 N.E.2d 268, 145 A.L.R. 1368, which the insurance company in the present case stresses, the Court of Appeals of New York, as recently as 1943, held that a special settlement agreement forming part of policies of insurance issued to a father in favor of minor children, under an optional mode of payment of a guaranteed minimum rate of interest and an accumulation until an infant beneficiary became twenty-one years of age, with payment of the principal sums when the beneficiary became thirty years of age, did not create a trust of personal property, but merely a debtor-creditor relationship between the insurance company and the insured, and that therefore, under New York law, the mother was not authorized to secure payments out of the sums in question for the education of the infant child. Thus, in the Nires case, the question for determination was this, as stated by Judge Finch (48 N.E.2d 268, at page 269): "May infants obtain an immediate allowance for support and education from interest accrued upon the proceeds of a life insurance policy left on deposit with the insurance company, despite an agreement between insured and insurer that the interest shall be accumulated but not be paid until the infants become twenty-one years of age?" The Court held, in spite of the existence of a New York statute permitting a court of equity to direct an allowance for maintenance and education of minor beneficiaries from a trust of personal property which directs an accumulation of income, that this statute could not be permitted to set at naught the agreement between the insured and the insurance companies. The Court said (page 271 of 48 N.E.2d):

"The extent of the jurisdiction of the courts of equity over trusts of personal property is well established. On the other hand the jurisdiction of courts to apply the powers conferred by section 17 to a relationship arising out of an agreement made between insured and insurer is not only not an exercise of the normal equity powers over trusts of personal property, but, as already noted, is expressly forbidden by the provisions of section 15.

"Other states likewise have held to the view that the general power of an equity court to regulate trusts of personal property and to apply the income thereof contrary to a direction for accumulation does not justify the invasion of an agreement whereby income is to be accumulated in an insurance relationship. Pierowich v. Metropolitan Life Ins. Co., 282 Mich. 118, 275 N.W. 789, and case cited therein. In harmony with this construction it may be noted that, while in section 16 of the same article accumulations of income of personal property are prohibited, except for infants, an amendment to that section permits accumulations of the income arising out of moneys held pursuant to an insurance relationship, namely certain accumulations of the income of these moneys to be applied to the payment of premiums of insurance. L. 1927, ch. 681.

"The unfortunate condition existing as to these minor children does not arise from the contract and is not controlling so as to justify its invasion. The intention of the insured is to be gathered solely from the agreements as made and which, while he had power to change them during his life, were left in force at the time of his death. Insurance has developed to large proportions and property rights of insured and beneficiaries have been created upon the faith of the protection accorded by the courts to insurance agreements and upon the enactment of that policy in statutory form in section 15. Nothing in section 17 or related sections furnishes any authority to the courts to invade and render nugatory these agreements.

"Since neither the language nor the setting of section 17 nor the nature of the power conferred therein indicates that the section deals with anything other than directions applicable to trusts of personal

property, it becomes unnecessary to pass on the question whether an invasion of contractual rights between insured and insurer may be sustained as constitutional if in fact it had been authorized by the Legislature."

It is true that the Court in the Nires case rested its decision directly upon the ground that the New York statute in question was not applicable to the facts as presented, because a trust of personal property was not involved, and did not attempt to pass upon the question as to whether an invasion of contractual rights between insured and insurer might be upheld if sanctioned by legislative enactment. But, as already stated, we have been referred to no California statute authorizing such a diversion and therefore, we believe that the reasoning and conclusion in the Nires case is applicable to the present case.

Petitioners seek to distinguish the Nires case by saying that whereas that case involved merely an attempt to invade the principal of a fund in order to meet current expenditures for the benefit of a minor, it did not involve, as does the present case, the settlement of an adverse claim which, if successful, would completely wipe out the interest of the infant beneficiary. We have already stated, however, that no ground appears upon which the adverse claim may be meritoriously asserted. But apart from this fact, we believe that clear authority must be found in the California law for violating the express terms of such a contractual relationship between insurer and insured before such can be violated.

In the briefs and arguments on behalf of both the insurance company and the various claimants, there was made extended reference to and analysis of the several provisions of the California Code relative to future interests vested and contingent. These provisions are as follows (Civil Code of California 1941, Deering):

"Section 690. Future interest, what. A future interest entitles the owner to the possession of the property only at a future period."

"Section 693. Kinds of future interest. A future interest is either:

"1. Vested, or

"2. Contingent."

"Section 694. Vested interests. A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest."

"Section 695. Contingent interests. A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain."

"Section 707. Fixing the time of enjoyment. The time when the enjoyment of property is to begin or end may be determined by computation, or be made to depend on events. In the latter case, the enjoyment is said to be upon condition."

"Section 708. Conditions. Conditions are precedent or subsequent. The former fix the beginning, the latter the ending, of the right."

An examination of the decisions of the Supreme Court of California construing these Code provisions discloses that it is well settled that the time of vesting is controlled by the intention of the testator or donor as expressed by the language employed, and that other or general rules of construction only become applicable when the intention of the testator or donor is ambiguous from the language employed by him.

Thus, in Re Washburn's Estate, 11 Cal. App. 735, 106 P. 415, 416, it was held that testamentary dispositions similar in language to that used in the special settlement agreement here involved, created contingent and not vested interests. There, the testator devised his residuary estate to trustees with the customary power to invest and with direction to pay one-half of the income to his wife for life and the remaining one-half to his daughter for her life, each one-half of the income to go to the survivor until the death of the survivor, upon whose death the trust property to vest in two named children of the daughter, and in such other children as may be born to her "or in such of them as shall then be living, share and share alike, the children of any deceased child, if such there be, to take by right of representation." The testator's wife survived him and conveyed all of her interest in the estate to her daughter. The daughter's two named children also survived both the testator and his widow, and the daughter was appointed guardian for her two children who were her only heirs when she conveyed and released to them all of her rights under the will and in the estate. It was held that both the living children named as well as unborn children had only contingent re-

mainders by the terms of the will; the named children's remainder being contingent because dependent upon a contingent event, namely, their survival at the time of their mother's, the life tenant's, death, and any possible unborn children's remainder being contingent both upon their being born and upon their survival at the time of the life tenant's death. Similarly, in the present case, the interests of the niece and nephew, Dorothy M. Bergland and Edward B. Mower, Jr., are not vested, but contingent, because their remainders depend upon their surviving the person having the life estate, namely, their uncle, Roswell C. Mower.

We have been referred to no later California decision which changes the rule laid down in the Washburn case. The present California Code provisions respecting vested and contingent remainders were in effect when that case was decided. There, the Court said (page 418 of 106 P.):

"The law prefers to consider future estates as vested, but the law also seeks to effectuate the wishes of the testator, and when his desire is clearly expressed, as we think it is here, it should be carried out, regardless of the conventional distinctions made between vested and contingent remainders, for this is the paramount duty of the court. * * * In all cases it is the intention, expressed in the instrument creating the expectant estate, that is to govern, and, therefore, if the language employed shows an intention to postpone the vesting until the happening of a certain event it is contingent. * * * The present capacity to take in possession is not a universal test. * * *

"By express terms the trust was to continue until the death of Mrs. Higgins, and that was the precise event upon the happening of which the title was to vest in the children living at the death of the testator, or 'such other children as may be born to her,' Mrs. Higgins. It seems to us that nothing is lacking to make entirely clear the intention that the children living at the death of the life tenant, or 'the children of any deceased child' then living, were to take, and this could be known only when the contingent event happened. *It is the uncertainty of the right of enjoyment, and not the uncertainty of its actual enjoyment, that renders the remainder contingent.* 4 Kent, 202–206. The uncertainty of any of the children of the class surviving Mrs. Higgins renders the

interest of any such contingent." (Italics inserted.)

We find nothing in any of the California or other decisions involving California law to which we have been referred on behalf of the petitioners, as for example, In re De-Vries' Estate, 17 Cal.App. 184, 119 P. 109; Hall v. Wright, 17 Cal.App. 502, 120 P. 429; Kinney's Estate v. Commissioner of Internal Revenue, 9 Cir., 80 F.2d 568, which impels a conclusion different from that which we have reached.

We thus conclude that to extend this opinion by further analysis of the California statutes or decisions; or to review decisions of the State Courts of New York which petitioners rely upon, the Code provisions there relative to vested and contingent remainders being similar to the California law; or to indulge in a discussion of the technical niceties often involved in distinctions between the various types of future interests, would serve no purpose, since we are fully satisfied that however justifiable, from a practical point of view, may be the purpose underlying the petition, this Court is, for the reasons herein given, without authority to direct or authorize diversion of the funds by the insurance company, as the petitioners desire.

An order will be signed in accordance with this opinion, dismissing the petition.