[S. F. No. 2644.   Department Two.—February 25, 1902.]

# R. F. SIMPSON, Appellant, v. ROBERT DALZIEL, Respondent.

ACTION FOR FRAUD—STATUTE OF LIMITATIONS—DISCOVERY—MEANS OF KNOWLEDGE.—In actions for relief on the ground of fraud, the statute of limitations of three years from the discovery of the fraud begins to run from the time when the plaintiff had means of knowledge of the fraud, and might with reasonable diligence have discovered it.

ID.—PRESUMPTION OF KNOWLEDGE.—A plaintiff will be presumed to have known whatever with reasonable diligence he might have ascertained concerning the fraud of which he complains.

ID.—FRAUD OF ATTORNEY—SETTLEMENT OF LAWSUIT—CONFIDENCE OF CLIENT—WANT OF CARE AND DILIGENCE.—Where the fraud charged is that of an attorney in holding back part of the money received in settlement of a lawsuit, the confidence reposed in him by the client is not an excuse for the neglect of the client to exercise such reasonable care and diligence in discovering the fraud as would relieve him from the bar of the statute.

ID.—INEXCUSABLE NEGLECT OF MEANS OF KNOWLEDGE.—It was inexcusable negligence on the part of the client not to use the means of

---

[1] 86 Am. Dec. 332.                    [2] 61 Am. Dec. 327.

knowledge within his power to ascertain the amount paid to his attorney upon the settlement of his lawsuit, and the amount actually paid by the attorney to his creditors upon his order for the payment of greater sums, which ascertainment would have disclosed the fraud charged.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion.

J. C. Bates, for Appellant.

It was not the duty of the defendant to mistrust his attorney, and when there is concealed fraud in breach of a confidential relation, the statute does not run until actual discovery and knowledge of the fraud. (*San Pedro etc. Co.* v. *Reynolds,* 121 Cal. 89, and cases cited; *Morgan* v. *Tener,* 83 Pa. St. 305; *Wickersham* v. *Lee,* 83 Pa. St. 416; *Atlantic National Bank* v. *Harris,* 118 Mass. 147, 153; *Betjeman* v. *Betjeman,* (1895) 2 Ch. 474; *Allen* v. *Conklin,* 112 Mich. 74; *Bonner* v. *McCreary* (Tex. Civ. App.), 35 S. W. 197.)

Campbell, Fitzgerald, Abbott & Fowler, for Respondent.

The averments of the discovery of the fraud are insufficient, and the plaintiff must be presumed to know what, from the means of knowledge within his power, he might have ascertained. (*Lataillade* v. *Orena,* 91 Cal. 565, 578;[1] *Wood* v. *Carpenter,* 101 U. S. 140-143, and cases cited; *Shain* v. *Sresovich,* 104 Cal. 402; *Moore* v. *Boyd,* 74 Cal. 171; *Burling* v. *Newlands,* 112 Cal. 501; *Lady Washington etc. Co.* v. *Wood,* 113 Cal. 482.)

HAYNES, C.—Action for money had and received. A demurrer to plaintiff's fifth amended complaint was sustained, without leave to amend, and plaintiff appeals from the judgment thereupon entered against him.

The money sought to be recovered by plaintiff in this action is alleged to have been fraudulently received by the defendant on or about February 20, 1893, and the fact that it was received by the defendant was not discovered until December 1, 1899. This action was commenced March 31,

---

[1] 25 Am. St. Rep. 219.

1900.   The amount claimed is $1,036.34, with interest from February 20, 1893.

Two grounds of demurrer are specified: 1. That the cause of action is barred by the statute of limitations; and 2. That the complaint is uncertain in particulars therein minutely specified. But these grounds may be considered together, since the alleged uncertainty relates to allegations intended to relieve the cause of action from the bar of the statute.

Subdivision 4 of section 338 of the Code of Civil Procedure provides that an action for relief on the ground of fraud or mistake must be brought within three years. But "the cause of action in such case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The facts alleged in the complaint are, in substance, the following: That in February, 1893, and long prior to that time, a suit was prosecuted in the superior court of Alameda County by this plaintiff against one Joseph Macdonough for the recovery of money claimed to be due plaintiff; that, to avoid expense and delay, he employed an attorney at law to settle said claim by compromise, on the best terms he could obtain, with full power to make any settlement that he might deem best for the interests of plaintiff; that on February 20, 1893, his attorney compromised said suit, and received from Macdonough for this plaintiff two checks of that date drawn on the Bank of California, one for $3,000, and the other for $616.80, payable to the order of his attorney; that his attorney indorsed and delivered these checks to Andrew Dalziel, the son and agent of defendant, for collection; that at the time plaintiff employed his attorney to compromise the Macdonough suit he instructed him to pay out of moneys received in said settlement $1,463.66 to the firm of Dalziel & Moller, and to settle with one A. A. Moore an indebtedness of plaintiff, the amount of which had not been ascertained; that said checks were collected by said Andrew Dalziel, and, as directed by plaintiff's attorney, he paid to Dalziel & Moller said sum of $1,463.66, and to said firm the further sum of $1,036.34 for the defendant, and the further sum of $1,116.80, for which last-named sum said firm drew its check payable to plaintiff, and delivered it to

his attorney; that his attorney delivered said check to the plaintiff, and then informed him that that represented all that was coming to him from the settlement with Macdonough after deducting his fee of $150, the payment to Dalziel & Moller of $1,463.66, and the payment to A. A. Moore of $300; that he had full confidence in his said attorney and had no reason to suspect, and did not suspect, that a fraud was being perpetrated upon him, or that said sum of $1,036.34, had been paid to defendant; that he was not then, or at any time since, indebted to the defendant in any sum whatever, and did not learn until December 1, 1899, that defendant had received said money, or that his attorney had received said two checks from Macdonough, and that he did not suspect that he had been defrauded until he was informed, on May 24, 1898, that his attorney had paid only $150 to said Moore, instead of $300, as reported to him; that after that date he frequently demanded of his attorney a statement or account of the money received from Macdonough, and what disposition had been made of it, and that such statement was frequently promised, and finally refused. The final discovery of the payment to the defendant is alleged to have been accidental. Dalziel & Moller conducted business both in Oakland and San Francisco; that plaintiff called on said firm in Oakland to find out how much he owed them on February 20, 1893, and was informed that his account would be found in the books of the San Francisco house, and upon going there he found from the books of said firm that his account had been credited on February 20, 1893, with the sum of $1,463.66, and in addition thereto there had been paid to defendant said sum of $1,036.34. It is also alleged that on many occasions between May 24, 1898, and December 1, 1899, he applied to said firm, at Oakland, to see the private account of the defendant and said firm account with plaintiff, and was told that defendant did not keep any individual books, and that plaintiff could get no information from the books of said firm as to defendant's private dealings with the plaintiff, and was also informed by the defendant that he kept no private books and could give him no information as to their private dealings.

The demurrer was properly sustained. The only excuse for what otherwise would appear to be gross negligence on

the part of the plaintiff is, that his confidence in his attorney was such that he had no reason to suspect, and did not suspect, that fraud was being perpetrated upon him. But this confidence did not absolve the plaintiff from the exercise of reasonable or ordinary care. It is not directly alleged that his attorney committed a fraud upon him, or made a mistake to his injury. There are several allegations which imply that plaintiff was never informed of the amount received by his attorney from Macdonough in settlement of said suit, but it is not directly alleged that he was not informed of the amount so received. He alleges that he was not present at the settlement, because he "was requested by his attorney not to come into the room where the settlement was about to be made," saying to plaintiff that he was excitable and there was danger of getting into trouble, as plaintiff was not then nor since on speaking terms with Macdonough; but that was no reason why he should not have inquired of his attorney whether he had secured a settlement, and, if so, for what amount. Natural curiosity, as well as business prudence, would have compelled him to make the inquiry, and his failure to make it was inexcusable negligence; and it is well settled in this class of cases that "one will be presumed to have known whatever with reasonable diligence he might have ascertained concerning the fraud of which he complains." (*Wood* v. *Carpenter*, 101 U. S. 140, and cases there cited.) Such inquiry is entirely consistent with the utmost confidence in the attorney, and it is evident that if the plaintiff had known the amount received upon the settlement with Macdonough, he would have immediately discovered that his attorney had not accounted for all he had received when he handed plaintiff the check of Dalziel & Moller for $1,116.80 and informed him that that represented all that was coming to him after deducting his fee of $150, $300 paid to Moore, and $1,463.66 paid to Dalziel & Moller,—in all, $3,030.46. If, therefore, the plaintiff had known, as he should have known, the amount paid by Macdonough, he would at once have seen that the whole was not accounted for. Besides, the check drawn by Dalziel & Moller to plaintiff's order showed that the money received by his attorney from Macdonough, or a large portion in excess of the amount due Dalziel & Moller, had passed through their hands, and hence another source of

information was at once disclosed. So, too, he had means of ascertaining the amount paid Moore, and common prudence would have required him to ascertain whether he had been paid and in what sum. In *Cole* v. *McGlathry*, 9 Me. 131, the plaintiff had given the defendant money to pay certain debts. The defendant falsely affirmed he had paid them, and fraudulently kept the money. It was held the plaintiff could not recover, because he had at all times the means of discovering the truth by making inquiries of those who should have received the money.

But it is not necessary to multiply authorities or to extend the discussion of the facts. If plaintiff knew the amount received by his attorney from Macdonough, he must have known at the time he gave plaintiff the check of Dalziel & Moller, and reported the other payments, that all had not been accounted for; and if he did not know the amount paid by Macdonough, he did not use such care and diligence as would relieve him from the bar of the statute.

I advise that the judgment be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.                    McFarland, J., Henshaw, J.

Temple, J., concurred in the judgment.