[Civ. No. 15187. Second Dist., Div. Two. Sept. 11, 1946.]

JOSEPH SHAPIRO, Appellant, v. EQUITABLE LIFE AS-
SURANCE SOCIETY OF THE UNITED STATES,
Respondent.

78

Harold A. Fendler and Bertin A. Weyl for Appellant.

Sheppard, Mullin, Richter & Balthis and Gordon F. Hampton for Respondent.

WILSON, J.—Appellant is the owner of several life insurance policies sold to him by respondent. In his complaint he alleged that one Adolph Frankel, who he asserted was an agent of respondent, had forged appellant's name on applications for loans on some of the policies and on checks issued by respondent payable to appellant for the amounts of the several loans made on the forged applications, and had applied the proceeds to his own use. Appellant sought to recover, (1) by his first cause of action, the amount of the alleged forged policy loans, together with interest which he had paid thereon prior to the time of his alleged discovery of the fraud; and (2) by a second cause of action, a declaratory judgment that the amount admittedly borrowed by him on his policies be declared to be the amount of his true obligation to respondent, and that the latter be ordered to cancel all other claimed indebtedness. Respondent answered denying the material allegations of the complaint and particularly denying that Frankel was its agent except to canvass for applications for insurance and to collect the first premiums thereon, and for no other purpose, and pleading the statute of limitations.

The first cause of action was tried by a jury which rendered a verdict in favor of respondent, and judgment was purportedly entered in accordance with the verdict. The second cause of action was tried by the court without a jury upon the evidence that had been presented to the jury, upon which findings and a separate judgment were rendered in favor of respondent. Appellant has appealed from the judgment of the court and has attempted to appeal from the purported judgment entered on the verdict of the jury.

Appellant and Frankel had known each other since 1906. The complaint alleges that since 1917 they had been close friends and a relation of trust and confidence existed between them, by reason of which appellant entrusted Frankel, at the latter's solicitation and request, with the care and physical custody of appellant's life insurance policies hereinafter mentioned.

In 1912, in Portland, Oregon, appellant purchased two life insurance policies from respondent. Upon arriving in Los An-

geles in 1916 he renewed his acquaintance with Frankel and the latter's brother. In 1916 and 1918 the Frankels sold appellant two policies. In 1927 Adolph alone sold him two additional policies, and a final policy in 1932, making seven in all.

The alleged forgeries extended over a period of nearly three years—from August 15, 1933, to June 5, 1936. Adolph Frankel committed suicide in September, 1940. Notwithstanding the fact that an intimate and confidential friendship had existed between the two men since 1917, and that appellant had entrusted Frankel with possession of his life insurance policies for many years, appellant asserts that he had no knowledge of Frankel's death until March, 1942.

1. *Frankel's authority as respondent's agent.* Appellant's case is predicated on the theory that Frankel was an agent of respondent with unlimited authority to bind the latter, and that all of his acts complained of by appellant were done as respondent's agent and duly authorized representative. The complaint alleges that Frankel, in his capacity as agent of respondent, retained physical custody, possession and control of appellant's life insurance policies; that appellant applied to Frankel in his capacity as such agent to secure loans on his policies; that in such capacity Frankel retained the applications for loans in his custody; that Frankel committed suicide because of defalcations made by him during the period he was acting in the capacity of agent for and on behalf of respondent.

Appellant having sought to charge respondent with the acts of Frankel as the alleged agent of respondent, the burden rested on him to prove the existence of such agency and that Frankel was authorized by respondent to do on its behalf the acts of which appellant complains. (*Ewing* v. *Hayward,* 50 Cal.App. 708, 715 [195 P. 970]; *Nofsinger* v. *Goldman,* 122 Cal. 609, 616 [55 P. 425].) Appellant failed to prove any of the allegations in the complaint necessary to bind respondent for Frankel's acts. The uncontradicted evidence is to the contrary.

Frankel's authority and duties as respondent's agent were expressly defined and limited by an agreement in writing and he was without power to represent or to bind respondent in any manner other than as thereby authorized. The agreement provides that "The agent shall canvass for applications for insurance in the Society and shall collect the first premiums thereon. . . . The agent is not authorized to make, alter or dis-

charge contracts for the Society, . . . or to bind the Society, in any way, . . . and his powers shall extend no further than as herein expressly stated.''

Appellant delivered his policies to Frankel and his brother upon their proposal that a disability and double indemnity clause, which could be had for a small additional expense, be added to them. After Frankel obtained possession of the policies he suggested that they be left with him because appellant was traveling much of the time, and that he, Frankel, could take care of them in case appellant should suffer an accident. In so doing he was the agent and representative of appellant and not of respondent.

The fact that Frankel, as an agent for the limited purpose of canvassing for applications for insurance, worked out of the office of an agency manager of the company did not add to his powers as an agent. The receipt which he gave to appellant when the latter's policies were delivered to him had been lost and appellant testified that the receipt was on a blank form bearing the name of respondent. (The right of the jury and the court to disbelieve appellant's testimony is discussed hereinafter.) If the statement be true, nevertheless Frankel's authority as agent, restricted as it was by the agency agreement, did not invest him with power to sign a receipt for the policies on behalf of the company, and if he procured a blank form and used it in an unauthorized manner respondent was not bound by it. As agent of respondent Frankel was without right to retain custody of the policies, to apply for or to accept applications for loans thereon for appellant, to retain such applications in his possession, or to receive checks issued by respondent in favor of appellant. Such acts as Frankel performed in those matters were done at the request of appellant and as the latter's agent, for the result of which respondent is not answerable.

2. *The statute of limitations.* In order to avoid the effect of the statute of limitations (Code Civ. Proc., § 338, subd. 4), and in anticipation of that defense, appellant alleged in his complaint that Frankel at all times concealed from him any knowledge or information concerning the alleged forged applications for loans or the alleged forgeries of his name on the checks, and that he had no knowledge or information of the same until March 1, 1942; he then immediately visited the office of respondent in Los Angeles and began his investigation, which resulted in the discovery that his name had been forged

on the checks and that they had been deposited in a bank in the account of Ad. Frankel & Co.; upon such discovery he signed affidavits in respondent's office that the endorsements were forgeries and that he had not received any of the proceeds of the checks.

By demurrer and by answer respondent pleaded that both causes of action set forth in the complaint were barred by subdivision 4 of section 338 of the Code of Civil Procedure. The complaint was filed in January, 1944, but it was stipulated that for the purpose of the action it was deemed to have been commenced as of March 1, 1942. This is the approximate date on which appellant claims to have received his first knowledge of Frankel's defalcations, when, in conversation with an agent of respondent in Redlands, he learned that Frankel had committed suicide in September, 1940, and was advised to look after his insurance because Frankel "had done all kinds of crooked work."

In 1917 appellant became a stockholder in the California Sanitary Canning Company whose plant was located in Los Angeles. Continuously since that date he has been actively engaged in the business of the company. His duties have required him to travel constantly in the territory comprising all of California south of Fresno and Santa Maria for the purpose of seeing that vegetables were planted, grown, harvested, and delivered to the cannery for processing. Beginning in 1928 appellant procured loans from respondent from time to time upon his insurance policies. He testified that because of his long absences from Los Angeles he gave instructions to the bookkeeper at the cannery to see that all amounts due on his insurance policies, both annual premiums and interest on policy loans, "interest payments, everything," were paid when notices were received from respondent; the payments were to be made "if I am in town or not." Appellant left his insurance matters entirely with the bookkeeper and never, as a prudent man would have done, made any computations of the amounts of interest which the latter had paid.

Though he had the means of knowing whether he was paying interest on an amount greater than his admitted borrowings he made no effort to ascertain the correct amount. Beginning in November, 1928, and continuing until 1942, statements were sent from respondent's office addressed to appellant at the office of the cannery at least once each year, in some years more often, showing the amount of principal and

interest unpaid on the loans. A separate notice was sent showing the loan status of each policy and the amount of interest due on each individual loan. In 1934 a notice was mailed to appellant showing interest due on a loan on a policy against which he claims not to have borrowed previously to the time the notice was sent. It was stipulated that the notices were sent by mail in envelopes properly stamped and addressed; that on the face of each envelope respondent's name and address were printed; that no one of said envelopes was returned; that each notice contained a statement of the amount of the loan and the interest due to the date of mailing against the policy which the notice represented. The presumption that the notices were received in the regular course of the mail (Code Civ. Proc., § 1963, subd. 24) is made certain by the evidence of the bookkeeper who testified that the notices were received by him at the cannery and that, as directed by appellant, he paid the interest called for by each of the statements; he made the payments out of the petty cash of the canning company, gave appellant memoranda of the respective amounts when he returned from a trip, and the latter repaid the money. All payments were made in accordance with notices received from respondent. This method was followed for a period of 10 years or longer prior to March, 1942, the date on which this action was stipulated to have been commenced. At least once each year appellant was thus explicitly informed of the status of his account with respondent, the amounts of interest demanded by it and paid by him on his loans, and the numbers of the policies on which the loans had been made. He therefore knew, or had timely means of knowing, that during all those years he was paying interest on amounts much greater than the sums he admits having borrowed. The notices were such as to put an ordinarily prudent man on notice of the amounts of the loans outstanding on each of the insurance policies. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (Civ. Code, § 19; *Scott* v. *Henry*, 196 Cal. 666, 671 [239 P. 314]; *Henrici* v. *South Feather L. & W. Co.*, 177 Cal. 442, 446 [170 P. 1135]; *Henigan* v. *Yolo Fliers Club*, 208 Cal. 697, 699 [284 P. 906].)

The bookkeeper was acting under the express direction of appellant, within the scope of his agency and within the

limitation of his authority as agent. His acts were therefore the acts of appellant, and his knowledge of the facts relating to the insurance, the amounts upon which interest was paid, and the numbers of the policies on which loans were outstanding, was likewise appellant's knowledge. (*Watson* v. *Sutro,* 86 Cal. 500, 516 [24 P. 172, 25 P. 64] ; *Atkinson* v. *Foote,* 44 Cal. App. 149, 165 [186 P. 831].) ▉ It was the duty of the agent to communicate to his principal all knowledge which he had received respecting the subject matter of the agency and the presumption is that he performed that duty. ▉ Notice given to or possessed by an agent within the scope of his employment is notice to the principal. (Civ. Code, § 2332; *Shamlian* v. *Wells,* 197 Cal. 716, 720 [242 P. 483] ; *Early* v. *Owens,* 109 Cal.App. 489, 494 [293 P. 136] ; *Waldeck* v. *Hedden,* 89 Cal.App. 485, 491 [265 P. 340].) ▉ One who acts through an agent will be presumed to know all that the latter learns concerning the transaction, whether it is actually communicated to the principal or not. There is no difference in this respect between actual and constructive notice. It is of no avail that the agent failed to communicate to his principal what he had ascertained. (*The Distilled Spirits case* (*Harrington* v. *United States*), 11 Wall. (78 U. S.) 356, 367 [20 L.Ed. 167, 171].) ▉ The finding of the court that each of the loan interest notices was received by appellant in due course of mail after their respective dates of mailing is sustained by the evidence.

▉ Respondent offered in evidence three applications for loans, one dated January 3, 1934, and two dated January 4, 1934. Appellant would not admit on the witness stand that the signatures on the applications were his but as to each one he said that "it looks like my signature." However, these same applications, among other documents, were presented by his counsel to a handwriting expert as exemplars of the genuine signatures of appellant for the purpose of comparison with the alleged forged endorsements of appellant's name on the checks above mentioned. The signatures on the applications for the loans must therefore be deemed to be his genuine signatures. Appellant testified that he never received the amount of the loan procured upon these applications and that he never made any complaint or inquiry concerning it. The amount of the check issued by respondent for the loan corresponds with an amount deposited in the account of Ad. Frankel & Co. six

days after the date of the applications. This occurrence was more than eight years prior to the time appellant claims to have discovered the fraud and alone was sufficient to put him on inquiry.

An action for relief on the ground of fraud or mistake is barred unless commenced within three years after the discovery of the facts constituting the fraud or mistake. (Code Civ. Proc., § 338, subd. 4) In order to escape the effect of this provision one who seeks to maintain such an action as this must allege and prove (1) when the fraud was discovered; (2) the circumstances under which it was discovered; (3) facts to show that he is not at fault for having failed to discover the fraud sooner. He "must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them . . . as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts." (*Lady Washington Cons. Co.* v. *Wood,* 113 Cal. 482, 487 [45 P. 809]; *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698, 702 [16 P.2d 268]; *Henigan* v. *Yolo Fliers Club,* 208 Cal. 697, 704 [284 P. 906].) Whether appellant had notice of circumstances sufficient to put him on inquiry was a question of fact to be determined by the jury or the trial judge. (*Northwestern P. C. Co.* v. *Atlantic P. C. Co.,* 174 Cal. 308, 312 [163 P. 47]; *West* v. *Great Western Power Co.,* 36 Cal.App.2d 403, 411 [97 P.2d 1014]; *Young* v. *New Pedrara Onyx Co.,* 48 Cal.App. 1, 20 [192 P. 55].)

The facts above related, especially the annual receipt of interest statements by appellant and his payment thereof, and his failure to complain or to investigate when he did not receive the amount of the loan applied for in 1934, were sufficient to lead him to knowledge of the forgeries of the checks. He will be presumed to have known whatever with reasonable diligence he might have ascertained. (*Wood* v. *Carpenter,* 101 U.S. 135, 140 [25 L.Ed. 807, 808].) Business prudence would have compelled him to make inquiry and his failure to make it was inexcusable negligence. (*Simpson* v. *Dalziel,* 135 Cal. 599, 603 [67 P. 1080].) Means of knowledge are equivalent to knowledge. (*Shain* v. *Sresovich,* 104 Cal. 402, 405 [38 P. 51]; *People* v. *San Joaquin etc. Assn.,* 151 Cal. 797, 807 [91

P. 740] ; *Vertex Inv. Co.* v. *Schwabacher,* 57 Cal.App.2d 406, 417 [134 P.2d 891].) Nothing was concealed by respondent. We are not concerned with Frankel or his acts since the rights and liabilities of respondent are not to be determined by his conduct. Upon appellant must rest the responsibility for his own disregard of known facts and for his dilatoriness and negligence in having failed to investigate the facts when he had been on notice for so many years.

Appellant argues that subdivision 4 of section 338 of the Code of Civil Procedure has no application to the case, and that "both defendant and the trial court have completely misconstrued and misconceived the nature of the present action and plaintiff's position." Nevertheless he pleaded facts in his complaint in essaying to avoid the effect of that provision by alleging failure to discover the fraud within three years of its commission, and at the trial he considered the statute to be of such import that he himself requested and the court properly gave an instruction that said section "provides that a cause of action for relief on the ground of fraud or mistake is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." He concedes in his brief that "this was a concealed fraud on the part of Frankel," but his protestations that "normally [it] would not have been discovered by the plaintiff" and that "he had a right to rely on the accuracy of the defendant's notices" are without merit for reasons above pointed out.

Appellant contends that the statute of limitations is not applicable because (a) respondent is a mutual company and holds in trust for its policyholders the funds representing the guaranteed cash surrender values, loan values, and dividends applicable to its issued policies, and (b) the statute of limitations does not run against a trust until actual knowledge has been brought home to the beneficiary and there has been either a demand by the beneficiary or a repudiation by the trustee. It is not necessary to enter into a discussion of the character of the funds and dividends referred to, since they are not the subject of this action and since appellant's contention must be rejected for other reasons: (1) The relation between insurer and insured is contractual (*Richards* v. *Metropolitan Life Ins. Co.,* 184 Wash. 595 [55 P.2d 1067] ; *Trinity Universal Ins. Co.* v. *Willrich,* 13 Wn.2d 263 [124 P.2d 950, 954] ) and the contracts of insurance did not create a trust as

between appellant and respondent. (*Mutual Benefit Life Ins. Co.* v. *Ellis,* (C.C.A.2) 125 F.2d 127, 130, cer. denied *sub nomine Eisenlord* v. *Ellis,* 316 U.S. 665 [62 S.Ct. 945, 86 L.Ed. 1741] ; *Equitable Life Assurance Soc.* v. *Brown,* 213 U.S. 25, 46 [29 S.Ct. 404, 53 L.Ed. 682, 691].) The relationship of a mutual life insurance company to its policyholder members is not that of trustee and *cestui que trust* but simply that of debtor and creditor. (*Lubin* v. *Equitable Life Assurance Soc.,* 326 Ill.App. 358 [61 N. E.2d 753, 758] ; *In re Moreland's Estate,* 351 Pa. 623 [42 A.2d 63, 66] ; *Crossman Co.* v. *Rauch,* 263 N.Y. 264 [188 N.E. 748, 751] ; *Holmes* v. *John Hancock Mut. Life Ins. Co.,* 288 N.Y. 106 [41 N.E.2d 909, 911].)
 (2) When appellant borrowed money from respondent the relationship between them as to the funds borrowed was that of debtor and creditor, whatever may have been their status otherwise. (3) As we have pointed out, appellant had had both actual and constructive knowledge of the facts for many years prior to the commencement of this action and the burden with which he is charged of proving that he did not have the means of discovering the fraud within three years prior to the commencement of the action (*Gray* v. *Yarbrough,* 61 Cal.App. 724, 731 [215 P. 914] ; *Reilly* v. *Richardson,* 18 Cal.App.2d 352, 353 [63 P.2d 1180] ; *Prewett* v. *Dyer,* 107 Cal. 154, 159 [40 P. 105] ; *Kelly* v. *Longan,* 5 Cal.2d 274 [53 P.2d 971] ) has not been sustained.

3. *The interest statements became accounts stated.* The purpose of submitting the periodical statements of principal and interest unpaid on the policy loans was to apprise appellant of the amounts claimed to be due and unpaid from him. It was his duty to examine the statements and to report to respondent at once any error found, and his failure so to do constituted his assent thereto and each statement became an account stated. (*Union Tool Co.* v. *Farmers etc. Bank,* 192 Cal. 40, 53 [218 P. 424, 28 A.L.R. 1417] ; *Adler* v. *Granelli,* 112 Cal. App. 688, 690 [297 P. 592] ; *San Jose Brick Co.* v. *Rhodes-Jamieson Co.,* 112 Cal.App. 558, 560 [297 P. 619].) An account stated is a writing that exhibits the state of the account between parties and the indebtedness claimed to be due from one to another, and if assented to by the debtor, either expressly or impliedly, it becomes a new contract. (*Lacy Mfg. Co.* v. *Gold Crown Mining Co., Ltd.,* 52 Cal.App.2d 568, 577 [126 P.2d 644] ; *Wright* v. *Strobeck,* 139 Cal.App. 552, 561 [34 P.2d 781] ; *Hendy* v. *March,* 75 Cal. 566, 568 [17 P. 702] ; *Mayberry*

v. *Cook,* 121 Cal. 588, 590 [54 P. 95].) Assent to such a statement is implied from failure to object within a reasonable time. (*Wright* v. *Strobeck, supra; Hendy* v. *March, supra; Luse* v. *Peters,.*219 Cal. 625, 629 [28 P.2d 357]; *Atkinson* v. *Golden Gate Tile Co.,* 21 Cal.App. 168, 171 [131 P. 107]; *Auzerais* v. *Naglee,* 74 Cal. 60, 64 [15 P. 371].) At least once each year for more than ten years prior to the stipulated date of the commencement of this action an interest statement became an account stated between appellant and respondent.

 Having by his own act permitted the creation of a new contract annually between himself and respondent, and having annually paid without protest the amounts shown on each account to have been due, appellant cannot now dispute the correctness of the sum presently owing by him as shown by the several accounts stated.

 Appellant maintains that the defense of an account stated, not having been pleaded in the answer, has been waived. Section 4½ of article VI of the Constitution provides that no judgment shall be set aside or new trial granted for any error as to any matter of pleading or procedure unless, after an examination of the entire cause, including the evidence, the court shall be of.the opinion that the error complained of has resulted in a miscarriage of justice. We have examined the evidence and have concluded that the findings and judgment are in accord with it and that the failure of respondent to plead an account stated has not resulted in a miscarriage of justice.

 Appellant's complaint that in order to prevent his policies from being cancelled he will be compelled to pay interest in the future on the fraudulent loans is answered by the fact that he paid interest thereon without objection until the notices ripened into accounts stated and until his right to object had been barred by the statute of limitations.

4. *The evidence of forgery.* The presumption is against fraud (*Hedden* v. *Waldeck,* 9 Cal.2d 631, 636 [72 P.2d 114]; *Ryder* v. *Bamberger,* 172 Cal. 791, 800 [158 P. 753]; *Abrams* v. *Daugherty,* 60 Cal.App. 297, 304 [212 P. 942]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal.App. 332, 338 [187 P. 996]) and is not overcome by shadowy evidence. (*Truett* v. *Onderdonk,* 120 Cal. 581, 588 [53 P. 26]; *Rice* v. *California-Western etc. Co.,* 21 Cal.App.2d 660, 668 [70 P.2d 516]; *Raine* v. *Spreckels,* 54 Cal.App.2d 169, 173 [128 P.2d 709]; *Trousdell* v. *Equitable Life Assurance Soc.,* 55 Cal.App.2d 74, 76 [130 P.2d 173].) The burden rested on appellant to

prove his allegation that he did not sign or authorize the signing of the several applications for loans which he claims were forged. Respondent was not required to prove their genuineness. There is no evidence that appellant did not sign them. The court found that the allegation to that effect was not true. The applications were not offered in evidence although appellant had the opportunity either by notice to produce or by subpoena duces tecum to require their production; or, if they were in respondent's home office in New York, depositions of the custodians of the documents could have been taken and the applications attached as exhibits. Appellant admitted having signed sundry applications for loans in the Los Angeles office of respondent and having received the amounts of the loans. His testimony that he did not sign the applications is no more satisfactory than that given by him with reference to those which he would not admit having signed but which his counsel subsequently submitted as bearing his genuine signatures. If the disputed applications had been produced the handwriting expert who testified in reference to the checks could have readily determined whether the signatures were genuine or forged. It is not outside the bounds of possibility that they would have been shown to be in the same category as those which appellant signed in 1934, when he did not receive the amounts applied for and failed to complain.

A handwriting expert testified that the checks payable to appellant and deposited in the account of Ad. Frankel & Co. had been endorsed in handwriting other than that of appellant. While there was no evidence that the endorsements were made by Frankel, the disputed checks, 11 in number, extending over the period from August 16, 1933, to June 11, 1936, were deposited in the Ad. Frankel & Co. bank account, and it will be presumed that the endorsements were made by Frankel or by some person in his behalf. No liability rests on respondent if this be true. There is no evidence that appellant did not know of or that he did not consent to the endorsements.

5. *Instructions to the jury.* Appellant assigns as error the giving of the following instruction: ''You are instructed that where a party to an action fails to produce a witness who is under his control, or who fails to produce documents under his control, when it would be natural for him to produce the documents or the witness if the facts known by him had been favorable, his failure to bring the documents or the witness before the court may create an inference that the

evidence is unfavorable to that party." The giving of such an instruction has been criticised and in some cases has been held to be error where there has been no failure to produce witnesses or documentary evidence or otherwise no proper occasion for it. The court did not err in giving the instruction in this case. The bookkeeper of the cannery was present at the trial. Appellant expressly declined to call him as a witness, whereupon he was called and testified on behalf of respondent. The evidence given by him, as already stated, to the effect that he received the interest notices, paid the same as directed by appellant and notified the latter who repaid the amounts paid out, tended to disprove appellant's contentions and furnished a reason for the latter's refusal to call him as a witness. The bookkeeper testified that there was a "J. Shapiro" file at the cannery in which receipts for payments made to respondent were placed and that they "probably" were there when he was testifying—"I think they are; they should be." This file was not produced at the trial. Two other persons, employees of the cannery and under appellant's control, who appear from the evidence to have had some knowledge of the matters in litigation, were neither called as witnesses nor brought into court, although respondent's counsel asked that they be produced. One of the employees referred to was the girl who handled the mail at the cannery to whom appellant testified that he gave instructions to hand all notices from insurance companies to the bookkeeper. What other instructions were given to her and what knowledge she had of appellant's insurance matters does not appear. It was not incumbent on respondent to call her as a witness and thus be bound by the evidence of an employee of its adversary.

The failure of appellant to produce the "J. Shapiro" file, his refusal to call the bookkeeper, and the evidence given by the latter, adverse to appellant's cause, when called by respondent, support the inference that the evidence of the two absent employees and the contents of the file would also have been unfavorable to appellant and provide a foundation for the instruction. (Code Civ. Proc., § 1963, subd. 5 and § 2061, subds. 6 and 7.)

The principle of the instruction is approved in 2 Wigmore on Evidence, (3d ed.) § 285, p. 162, where the author says: "The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his

opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted. The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause.*" (Italics in the text.) Among the authorities cited in support of the quotation are section 1963, subdivision 5, and section 2061, subdivisions 6 and 7, of the California Code of Civil Procedure.

We find no error in giving the instruction, but even though it had been improper the objection to it was waived by appellant's request for an instruction which the court gave with the same purport but in different language as follows: "If and when you should find that it was within the power of a party to produce stronger and more satisfactory evidence than that which was offered on a material point, you should view with distrust any weaker and less satisfactory evidence actually offered by him on that point." Appellant cannot complain of an instruction given at the request of respondent when he requested a like instruction. (*Langazo* v. *San Joaquin L. & P. Co.,* 32 Cal.App.2d 678, 696 [90 P.2d 825].) One may not complain of error which he himself has invited. (*Van Der Veer* v. *Winegard,* 41 Cal.App.2d 518, 521 [107 P.2d 97]; *Gjurich* v. *Fieg,* 164 Cal. 429, 433 [129 P. 464, Ann. Cas. 1916B 111].) Appellant having adopted a theory at the trial the judgment will not be reversed because the trial court instructed the jury according to that theory. (*Sommer* v. *Martin,* 55 Cal.App. 603, 610 [204 P. 33]. See *Diel* v. *Baxter,* 58 Cal.App.2d 383, 387 [136 P.2d 789]; *Marra* v. *Aetna Const. Co.,* 15 Cal.2d 375, 379 [101 P.2d 490]; *United States Farm Land Co.* v. *Darter,* 42 Cal.App. 292, 303 [183 P. 696].)

The court properly instructed the jury (a) that the burden rested on appellant to prove that his failure to find out about the claimed fraud was not occasioned by the lack of diligence of himself or his authorized agent; (b) that the burden was on him to show by a preponderance of evidence

that he or his authorized agent did not have notice or knowledge of or means of discovering the alleged fraud prior to March 1, 1939, that would have put an ordinarily prudent person on notice; (c) that if appellant failed to meet the burden of proof by a preponderance of the evidence, then the statute of limitations commenced to run against his cause of action before March 1, 1939. (*Lichtenberg* v. *Burdell,* 101 Cal. App. 20, 48 [281 P. 518]; *Vogel* v. *Marsh,* 120 Cal.App. 99, 101 [7 P.2d 756]; *Lady Washington Cons. Co.* v. *Wood,* 113 Cal. 482, 486 [45 P. 809]; *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698, 702 [16 P.2d 268].) While the statute of limitations ordinarily is an affirmative defense and the burden rests on the defendant to prove such defense, yet in an action for fraud which is commenced more than three years after it occurred the burden is not on the defendant to show that knowledge of the facts was brought home to the plaintiff but is on the plaintiff to prove that he did not discover the facts constituting the fraud within three years prior to the commencement of the action; and he must further show the time and the circumstances under which they were brought to his knowledge. (*Lady Washington Cons. Co.* v. *Wood, supra,* p. 487.) A plaintiff in such a case as this would be defeated if no evidence were given on either side (Code Civ. Proc., § 1981), and if he should fail to meet the burden of proof cast upon him the defendant would not be required to prove facts and circumstances discrediting the plaintiff's allegation or showing its unlikelihood or improbability. Until the burden is met by the plaintiff the defendant may remain silent. The information repeatedly brought to appellant's attention concerning the amounts due on his policy loans carried a direct suggestion of the fraud of which he now complains.

We find no error in the instructions given to the jury relating to the duty of appellant to make inquiry concerning facts which came to his attention, or to the attention of his agent, or in respect to the facts which would have caused a prudent man to make inquiry, or in the instruction defining "discovery," all of which are correct statements of the law. If the circumstances are sufficient to put a prudent man on inquiry he is charged with notice and knowledge of the existing facts. (*Prouty* v. *Devin,* 118 Cal. 258, 262 [50 P. 380].)

A reviewing court will not consider one instruction separate and apart from all others. Instructions must be con-

sidered in their entirety, each in connection with all the others. The court will not reverse a judgment even though an instruction or isolated statements are subject to criticism because of verbal inaccuracies, or because they do not contain all conditions and limitations that are to be found in all of the instructions, if they harmonize as a whole and state fairly and correctly the law of the case. (*Los Angeles etc. District* v. *Abbot,* 24 Cal.App.2d 728, 740 [76 P.2d 188]; *Shields* v. *Oxnard Harbor District,* 46 Cal.App.2d 477, 489 [116 P.2d 121]; *Westover* v. *City of Los Angeles,* 20 Cal.2d 635, 637 [128 P.2d 350].)

If any errors may be found in the instructions they become immaterial by reason of the fact that the findings of the court are adverse to appellant on all issues presented by the pleadings, including those in the first cause of action that were submitted to the jury. Since the views of the court as expressed in its findings and judgment are that appellant is not entitled to recover the amount sued for in the first cause of action and that his action is barred by the statute of limitations, it is reasonably certain that if the judgment on the verdict had been the final judgment in the case the court would not have set it aside on a motion for a new trial. Therefore no error in the instructions could have resulted in a miscarriage of justice. (*Haney* v. *Takakura,* 2 Cal.App.2d 1, 9 [37 P.2d 170, 38 P.2d 160]; *Wallace* v. *King,* 27 Cal.App.2d 174, 181 [80 P.2d 523]; *Etienne* v. *Kendall,* 202 Cal. 251, 257 [259 P. 752].)

6. *The findings of fact are sustained by the evidence.*
In reference to appellant's claim that some of the findings are not sustained by the evidence certain principles of law are applicable: Where a conflict in the evidence exists the findings of the trial court are conclusive and every substantial conflict must be resolved in favor of the finding. (*Buckhantz* v. *R. G. Hamilton & Co.,* 71 Cal.App.2d 777 [163 P.2d 756], and cases cited; *Berger* v. *Steiner,* 72 Cal.App.2d 208 [164 P.2d 559].) An appellate court will view the evidence in the light most favorable to the respondent, will indulge all intendments which favor sustaining the findings of fact, and will not disturb a finding if there is substantial evidence in the record to support it. (*Estate of Isenberg,* 63 Cal.App.2d 214, 216 [146 P.2d 424].) As to the first cause of action the jury, and as to the second cause the court, was the sole judge of the credibility of the witnesses,

including appellant (Code Civ. Proc., § 1847), and both the jury and the trial judge were free to disbelieve appellant's testimony, even though uncontradicted, if any rational ground existed for so doing. (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868], and cases cited; *Gray* v. *Southern Pacific Co.*, 23 Cal.2d 632, 641 [145 P.2d 561]; *Blanc* v. *Connor*, 167 Cal. 719, 722 [141 P. 217]; *Davis* v. *Judson*, 159 Cal. 121, 128 [113 P. 147].)

In weighing appellant's testimony the court and the jury had a right to and no doubt did take into consideration the manner in which he testified and the fact that on direct examination his memory was clear and his answers positive, while on cross-examination concerning the same matters as many as 30 times his answer was "I don't remember," or the equivalent. The jury and the court also had a right to consider his failure to call available witnesses who were under his control as employees at his cannery, and his omission to produce the "J. Shapiro" file which may have contained evidence pertinent to the issues in the action. Appellant testified that he never signed an application for a loan of a blank amount, but two of the applications signed in 1934 which his counsel admitted were signed by him were for blank amounts. The jury and the trial judge were in accord as to their findings and as to the weight given to the evidence produced by the respective parties.

Pursuant to the rules of law above stated and by reason of the weight, or the lack of it, that may have been given to appellant's testimony, and by reason of all the evidence and the circumstances herein related, the court was justified in rejecting appellant's evidence and in finding: (a) That it was not true that his name was forged by Frankel on the endorsements of the checks without his knowledge or consent; (b) that it was not true that Frankel concealed the facts relating to the loans and the alleged forgeries from him; (c) that he knew the amounts of his personal borrowings against each of his policies. Since Frankel was not respondent's agent, except for the limited purposes set forth in the agency agreement, findings (a) and (b) were immaterial insofar as the cause of action against respondent is concerned. There is clear and positive evidence, hereinbefore stated at length, sustaining the several findings that appellant received each of the loan interest notices in due course of mail; that

they were received by his agent, the bookkeeper; that the latter paid the amounts shown to be due; that memoranda of the payments were given to appellant and he repaid each amount; that the interest notices were such as to have put an ordinarily prudent man upon notice of the amounts of the loans and advances then currently outstanding against each policy; and that appellant discovered the acts of Frankel in connection with the loans and advances more than three years before the stipulated time of the commencement of the action.

7. *The purported judgment on the verdict was void and the only judgment was that rendered by the court.* Immediately after the rendition of the verdict of the jury on the first cause of action on October 10, 1944, the clerk, assuming it to be his duty so to do (Code Civ. Proc., § 664), entered a judgment in conformity with the verdict. The second cause of action having been submitted to the court without additional evidence, findings of fact and conclusions of law thereon were filed on January 15, 1945, and judgment by the court was filed on the same day and entered on January 16, 1945. Appellant assigns as error the entry of two judgments, asserting that there can be but one judgment in an action no matter how many counts the complaint contains. The judgment rendered by the court recites the rendition of the verdict of the jury and the entry of judgment thereon, incorporates the same in the judgment of the court "as if specifically set forth herein," and decrees that "plaintiff take nothing by his complaint in this action," obviously covering both causes of action.

The general rule is that there can be but one judgment in an action (see *Nicholson* v. *Henderson,* 25 Cal.2d 375, 378 [153 P.2d 945]; *Steiner* v. *Davis,* 10 Cal.App.2d 519, 521 [52 P.2d 530]; *Bank of America* v. *Superior Court,* 20 Cal.2d 697, 701 [128 P.2d 357]), and there is but one judgment in the instant case. Where special issues which form only a portion of the controversy between the parties to the action are submitted to a jury and the remaining issues are tried by the court and findings of fact made thereon, no judgment can be entered in the case at the time the jury renders its verdict. The case has not been tried and the trial has not been concluded until the court has rendered its decision disposing of all issues submitted to it, and there is no decision

until the court has passed upon the facts and drawn its conclusions thereon. (*Reclamation Dist.* v. *Thisby,* 131 Cal. 572, 574 [63 P. 918]; *Rosslow* v. *Janssen,* 136 Cal.App. 467, 470 [29 P.2d 287]; *Bell* v. *Marsh,* 80 Cal. 411, 414 [22 P. 170].)

 Where, in an action for injunction and damages, the question of damages is submitted to a jury its verdict does not affect the equitable issues which are to be determined by the court upon findings of fact made by it. The clerk is without authority to enter a judgment on the verdict where issues of purely equitable cognizance remain which the court alone can determine and which it had not determined at the time the verdict was rendered. (*Farrell* v. *City of Ontario,* 39 Cal. App. 351, 359 [178 P. 740]; *Churchill* v. *Louie,* 135 Cal. 608, 612 [67 P. 1052].) Section 664 of the Code of Civil Procedure is directory and it is not necessary to the validity of a judgment that it should be entered within 24 hours after the verdict is rendered. (*Churchill* v. *Louie, supra.*) The trial of this action had not been concluded when the verdict of the jury was rendered, and the judgment entered thereon having been premature was void and of no effect. (*Farrell* v. *City of Ontario, supra; Vallejo etc. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 558 [147 P. 238].) A motion for a new trial following the entry of judgment by the clerk on the verdict would likewise have been premature. (*Farrell* v. *City of Ontario, supra,* p. 360.)

There is but one judgment in the case, to wit, the judgment of the court which followed the findings of fact determining all issues both legal and equitable adversely to appellant, which for the reasons herein stated is affirmed. The purported appeal from the void judgment entered on the verdict of the jury is dismissed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 4, 1946. Shenk, J., Edmonds, J., and Schauer, J., did not participate.