[Civ. No. 12170.   First Dist., Div. Two.   Aug. 26, 1942.]

B. F. RAINE, Appellant, v. RUDOLPH SPRECKELS et al.,
Respondents.

Keyes & Erskine, Louis Ferrari, H. H. Bechtel and George
D. Schilling for Appellant.

Brobeck, Phleger & Harrison, L. S. Mana, Cushing & Cushing and William H. Gorrill for Respondents.

NOURSE, P. J.—On June 17, 1930, Rudolph Spreckels sold to his wife Eleanor their residence in Hillsborough for the sum of $100,000, which was paid to him in cash out of the separate funds of Mrs. Spreckels.   The entire sum was deposited in Mr. Spreckels' account in the Bank of America and used by him to pay existing obligations.   On November 9, 1936, the plaintiff, as assignee of the Bank of America, commenced this action to set aside the sale upon the grounds

that the transaction was made without consideration and with the intent to defraud the creditors of the grantor. A trial was had before the court and judgment followed for the defendants. Plaintiff's appeal from this judgment, in the final analysis, raises the single question whether the findings of the trial court are supported by substantial evidence.

In the year 1928 Mr. Spreckels had a net taxable income of over $13,000,000, on which he owed a federal income tax of over $2,000,000. In September, 1929, he borrowed from the Bank of America $500,000 to pay the third instalment of this tax. In December, 1930, this indebtedness was paid by a substituted note of a corporation which was guaranteed by Mr. Spreckels. Execution on a judgment based upon this note was returned unsatisfied, and in November, 1936, this action was commenced. The answers denied the allegations of fraud and alleged that Mrs. Spreckels had purchased the property for cash paid out of her separate property, that the sum paid was not less than the market value of the property, that the proceeds of the sale were used by Mr. Spreckels in paying various obligations, including interest paid to the Bank of America on the existing indebtedness, and that Mr. Spreckels was not insolvent at the time of the sale.

The trial court found that the property, consisting of 20.65 acres, was sold as alleged for the sum of $100,000 which was paid in cash out of the separate property of the grantee, that "the said sum of $100,000 was a substantial and valuable consideration for said purchase and represented the fair and reasonable market value of said property for cash at said time; that defendant Rudolph Spreckels in making said sale and defendant Eleanor J. Spreckels in making said purchase dealt at arms length.

"V

"That said sum of $100,000 was received by said defendant Rudolph Spreckels, and was deposited in the Bank of America of California, predecessor in interest of said Bank of America National Trust and Savings Association, and became part of the estate of said Rudolph Spreckels, and was disbursed by him in the payment of then existing and subsequently accruing debts and obligations, and in part upon obligations owing to said Bank of America of California.

"VI

"That at the time of the sale of said property, towit, on the 17th day of June, 1930, the defendant Rudolph Spreckels

was insolvent, but the defendant Eleanor J. Spreckels neither knew nor had reason to believe that defendant Rudolph Spreckels was insolvent.

"VII

"That in selling said property and in making and delivering the said deed defendant Rudolph Spreckels did not nor did defendant Eleanor J. Spreckels, in buying said property and accepting said deed, have or entertain any intent to defraud the then existing or future creditors of defendant Rudolph Spreckels, including plaintiff and plaintiff's assignor; that said sale was not made up on any secret or other trust, but was an outright sale for cash, and said Rudolph Spreckels by said sale parted with all interest and ownership in said property, and said defendant Eleanor J. Spreckels thereupon became the sole and absolute owner thereof."

In support of these findings the respondents refer to the undisputed evidence (appellant concedes that these essential facts are not disputed) that, upon their marriage in 1895 the respondents moved to a home in San Francisco which Mr. Spreckels presented to his wife as her separate property. In 1925 Mrs. Spreckels sold the place for $90,000. In 1922 Mr. Spreckels purchased the 20.65 acres here involved for $82,000. They also owned a home in Sonoma County which had cost them over $300,000. This was sold in 1934 for $118,000. In 1927 Mr. Spreckels became heavily involved in financial transactions in the east and moved to the city of New York. Mrs. Spreckels continued to maintain the family home in Hillsborough. She testified that during this period she had no knowledge that Mr. Spreckels was insolvent or in financial difficulties, that she merely assumed that he wanted some ready money, that he never discussed his business affairs with her, and that "I knew nothing about his business affairs. I knew he was a rich man, but beyond that I did not know what he had."

The circumstances of the sale are that Mr. Spreckels, while in New York, notified his son, who was his attorney in fact in San Francisco, to sell the residence. The son notified his mother who offered to pay $50,000 in cash and give a mortgage in a like sum. Mr. Spreckels replied that this was not acceptable and that he wanted the full sum in cash. The son consulted Mr. Wheeler, who was Mr. Spreckels' attorney and who prepared the deed and the escrow instructions. But Mr. Wheeler advised that Mrs. Spreckels should have independent

legal advice and upon her request he suggested that she consult Mr. Sidney Ehrman. Mrs. Spreckels went to Mr. Ehrman's office, but, not finding him in, she consulted Mr. Jerome White who acted for her throughout the transaction. Mrs. Spreckels borrowed $50,000 from one bank on securities which she owned and raised the balance on loans upon her personal savings accounts. On June 12, 1930, $50,000 was paid, the papers were placed in escrow pending search of title, and on June 17 the final payment was made and the deed then recorded. Mrs. Spreckels has lived in the house continuously since it was built, but in November, 1930, Mr. Spreckels discontinued an allowance of $2,500 a month which he had paid her from the time of their marriage, and in August, 1931, she sold fourteen acres of the property to Thomas Fortune Ryan III for $144,000.

It is appellant's theory that "all these unusual and excessive motions" preceding the sale were taken because the parties feared it might subsequently be questioned by creditors, that the employment of separate counsel for Mrs. Spreckels was done "to give the transaction the outward appearance of a bona fide sale in case it was later questioned." In support of this theory appellant refers to the failure to offer the property for sale in the open market, the "unusual and excessive" efforts to give the transaction appearance of fairness by employing counsel of high reputation and integrity, the personal interest of Mrs. Spreckels in saving her home property, her failure to inquire about her husband's financial condition, and her failure to pay an adequate consideration for the property.

All these references present a combination of circumstances upon which the conjecture of fraud in the transaction is based. It would serve no purpose to lengthen the opinion by a recital of the evidence relating to each item. It is sufficient to say that the trial court had all the witnesses for observation, that evidence was taken showing the unusual financial conditions of the period, the sudden changes from affluence to poverty, and the recurrent difficulties of those in this class to maintain large and expensive homes. As to the value of the property at the time of the sale an expert witness testified "There was no market value for the property in 1930, if you speak of market value from the standpoint of selling. There was just no purchasers for that type of property in June, 1930."

The rule of law which governs here, as in any case where the evidence is equally balanced, rests upon the sound prin-

ciple that ''The presumption is always against fraud, a presumption approximating in strength to that of innocence of crime, and it should not be deemed overcome, even prima facie, upon a showing so intangible and shadowy.'' (*Truett v. Onderdonk*, 120 Cal. 581, 588 [53 Pac. 26].) It is stated more at length in 10 Cal. Jur. 741, as follows: ''If there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, one favoring fair dealing and the other favoring corrupt practice, it is the duty of court or jury to draw the inference favorable to fair dealing. Fraud must always be proved, so that when a plaintiff's case goes no further than to establish a state of facts from which the inference of fraud may or may not be reasonably drawn, he has failed to establish his charge by a preponderance of the evidence. This does not, of course, mean that fraud must be proved by direct evidence. This is not always nor even often possible. But it does mean that the indirect evidence and the inference to be drawn from the proved facts must be so convincing as to satisfy court or jury that fraud was designed and accomplished.'' ▮ The trial court applied this doctrine to its judgment and found that the appellant had failed to prove fraud in the transaction and our examination of the record satisfies us that these findings should not be disturbed. The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied September 25, 1942.